## EDNA C. GLOOR v. P. R. ALLEN.

Decided November 20, 1907.

**1.—Fraud—Partnership.**

Where the husband being insolvent, misapplied and devoted to his own use assets of his business partnership in Texas, a portion of which, in money and due to his partner on settlement of their accounts, he gave to his wife before his death and which she retained in her possession in another State, a personal judgment for the amount was properly rendered against her, on personal service obtained in Texas, at suit of the surviving partner.

**2.—Same—Homestead and Exemption.**

One partner can not, by diverting or misapplying partnership funds, build up such title thereto as will entitle his surviving wife to hold them as exemptions or in lieu of exempted property.

**3.—Error—Cross Assignment—Failure to Except.**

An appellee can not, by cross assignment, assert error in rendering judgment in his favor for an insufficient amount where he has not preserved his rights by objecting to the judgment in the lower court.

Appeal from the District Court of Delta County. Tried below before the Hon. R. L. Potts.

*Wood & Phillips,* for appellant.—The claim sued on is against the estate of L. M. Gloor, who died a nonresident of this State, and shows no liability on the part of Edna C. Gloor, who is a nonresident of this

State, from the simple fact that she has property in her possession in the State of Missouri belonging to the estate. Blinn v. McDonald, 92 Texas, 604; Leatherwood v. Arnold, 66 Texas, 414; Wheeler v. Selvidge, 30 Texas, 407; Ansley v. Baker, 14 Texas, 607.

Edna C. Gloor was entitled to the $3,000, or at least a portion thereof, in lieu of homestead and other exempt property, and plaintiff was not entitled to a personal judgment against her on the ground that she had this money in her possession in Missouri. Runnels v. Runnels, 27 Texas, 516; Reeves v. Petty, 44 Texas, 249; Waples on Homestead, p. 907; McCoy v. Brennan, 61 Mich., 362.

A judgment rendered against a surviving widow for the debt of her deceased husband, because of funds in her possession belonging to the estate, should provide for execution against the community property alone or against his separate property. Leatherwood v. Arnold, 66 Texas, 414; Wheeler v. Selvidge, 30 Texas, 406; Tucker v. Brackett, 28 Texas, 337; Speer on Married Women, secs. 384-398.

*J. L. Young,* for appellee.—Appellant participated with her husband in the fraud by which she obtained and held possession of the funds and property belonging to the partnership and liable for its debts. Hendrix v. Nunn, 46 Texas, 141, 147; Fisher v. Wood, 65 Texas, 199, 205; 3 Pomeroy's Equity, secs. 1047, 1048, 1051 and 1053.

Appellant having obtained the said funds and property by fraud, the liens still existed against the same in her hands, and she was personally liable for the amount of the said funds and property so obtained. Cravens v. Booth, 8 Texas, 243, 249; Moore v. Steele, 67 Texas, 435, 439; O'Brien v. Hilburn, 9 Texas, 298, 299; Ryan v. Maxey, 43 Texas, 192, 196; Zapp v. Johnson, 87 Texas, 641; Focke v. Blum, 82 Texas, 436, 443; Ohio Cultivator Co. v. Peoples' Natl. Bank, 22 Texas Civ. App., 643, 652; McMurry v. Stanley, 69 Texas, 227, 236; 20 Cyc., 522; 15 Am. & Eng. Ency. of Law (2d ed.), pp. 899-901 and 895; 2 Pom. Equity, sec. 814; Wait on Fraud, secs. 180 and 192; 8 Am. & Eng. Ency. of Law, pp. 1043 and 1053.

Appellee is not required to pursue the possibly vain and fruitless course of trying to force the payment of the said indebtedness and his partnership interest through an administration. Heard v. McKinney, 1 Texas U. C., 83; Birdwell v. Butler, 13 Texas, 338-9; Wilson v. Demander, 71 Texas, 603; 20 Cyc., pp. 678-9 and 712 to 715; 20 Cyc., 522; Summerlin v. Rabb, 11 Texas Civ. App., 53; Duncan v. Veal, 49 Texas, 603; Boothe v. Fiest, 80 Texas, 141; R. S., art. 1194, sec. 7.

Appellant, being a nonresident of this State, was not entitled to the benefits of the homestead and exemption laws of this State; and if she had been entitled to such exemptions she should have sought such through the Probate Courts of this State. Furthermore, she had more than a sufficiency of funds in her hands, and claimed by her, besides the $3,000, to provide herself with such exemptions or the allowances in lieu thereof. Woodall v. Rudd, 41 Texas, 375; Jordan v. Godman, 19 Texas, 273; Alston v. Ulman, 39 Texas, 158; Walker v. Abercrombie, 61 Texas, 69; Tiebout v. Millican, 61 Texas, 516; Moore v. Moore, 31 S. W. Rep., 534; Moore v. Glass, 6 Texas Civ. App., 368; Franks v. Chapman, 60 Texas, 46; Heath v.

Layne, 62 Texas, 686; McGowen v. Zimpelman, 53 Texas, 479, 484; Ball v. Lowell, 56 Texas, 579.

KEY, ASSOCIATE JUSTICE.—The nature and result of this suit, as well as the facts upon which the judgment was based, are shown by the trial judge's conclusions of fact and law, which are as follows:

"1.—I find that plaintiff rented the farm and meadow lands described in his petition from his father, J. H. Allen, for the year 1903, and in consideration of the rental charge of $2,500 for that year.

"2.—Plaintiff and L. M. Gloor entered into a partnership contract for 1903 to cultivate, handle and subrent the said farm and meadow lands for that year, and subsequently, as alleged in plaintiff's said petition, and by which plaintiff was to furnish the farm implements and farm machinery, and L. M. Gloor was to furnish the necessary live stock; and after the said rent charges and expenses of running the said farm and meadow they were to divide the profits equally between them, and share whatever losses they might sustain equally.

"3.—L. M. Gloor bought about 20 head of mules to be used on the farm, but they proved to be too small and young, and were unbroke, and could not be used. Plaintiff bought and furnished the necessary live stock and farm implements and machinery for the two years that this partnership existed. The mules were kept by L. M. Gloor till the latter part of 1904, when he sold some, and the others, six in number, were levied on January 27, 1905; and these mules were mainly kept up, fed and pastured at the expense of the partnership.

"4.—The crop and partnership business of 1903 proved to be at a loss. Plaintiff advanced and paid the sum of $790 to pay the balance due on the rents and expenses for hired labor for the benefit of the partnership, thus making L. M. Gloor indebted to him in the sum of $395. L. M. Gloor also checked out and used for his own personal benefit the sum of $400 out of and against the partnership account at the Delta National Bank of Cooper; and plaintiff was compelled to and did pay this sum of money, thereby making L. M. Gloor indebted to plaintiff at the end of 1903 in the sum of $795 in the partnership business, and this sum was not paid back at the institution of this suit.

"5.—During the latter part of December, 1903, L. M. Gloor borrowed the sum of $1,000 from J. H. Allen, and for which loan and amount plaintiff became surety, having also assisted in arranging and securing the loan. L. M. Gloor also gave J. H. Allen $1,500 of Cooper Gin Company stock as collateral and a mortgage on ten head of the said mules to further secure the payment of the said loan. Gloor also gave his father a mortgage on eight head of the mules to secure a note of $600 to him.

"6.—Plaintiff and L. M. Gloor continued the partnership in 1904, on the same terms and conditions, and the said lands and meadow were again obtained from J. H. Allen for 1904 at a rental of $2,500 for that year; and again the plaintiff and L. M. Gloor were to share the losses, if any, and likewise the profits, after the rent and expenses were paid. The partnership contract, rent charges, were in all things as in 1903, and a continuation of that year's partnership contract and arrangement.

"7.—L. M. Gloor and the defendant, Edna C. Gloor, were married to each other in the State of Missouri during the month of February, 1904. At this time he lived and resided in the State of Texas and she lived in the State of Missouri, and after their marriage they lived and resided in Texas till the month of February, 1905, when they moved to the State of Missouri, and where they lived till his death, and where she has since lived and still lives.

"8.—At the time of the said marriage the said L. M. Gloor was insolvent, and so remained till his death; and the defendant had no property then and has obtained none since, except that transferred or given her by L. M. Gloor. On December 14, 1902, L. M. Gloor obtained a policy of life insurance on his life for the amount of $10,000 from the New York Life Insurance Company, and it was made payable to "his executors, administrators or assigns, or such other beneficiary as should be designated," and on March 22, 1904, he had this policy changed and made payable to his wife, Edna C. Gloor. And I find that such transfer to defendant Edna C. Gloor of this policy of $10,000 was without any fraudulent intent and without fraud.

"9.—Plaintiff was called away on business about the middle of June, 1904, to South McAlister, Ind. Ter., and there he has been detained ever since, except occasional trips back in the latter part of 1904 and early part of 1905 to see after getting a settlement of the partnership business. L. M. Gloor was in entire charge of the crops and business from the time plaintiff left till this suit was brought, January 27, 1905.

"10.—L. M. Gloor had charge of and collected all of the crops, hay and rents of 1904 (except the sum of $529.53, which was not gathered when this suit was brought), and realized therefrom the sum of $5,995.32; and the rent to J. H. Allen was $2,500, and the expenses of the partnership in making the crop and for hired labor (not counting the teams, implements and machinery by plaintiff) was the sum of $1,534.32, making the total rents and expenses for that year the sum of $4,034.32.

"After this suit was filed there was gathered of the partnership property and crops not then gathered the amount of $529.53, making a total realized of that year's crops and partnership business the sum of $6,524.85, leaving a balance of the partnership funds, after deducting the said rents and expenses, the sum of $2,490.53, and to each partner the sum of $1,245.26. The money to pay the said expenses was advanced and paid by plaintiff, and this has not been repaid him; and likewise he has paid the said rents, and that amount has not been repaid him.

"There was in the two banks, unchecked out, partnership funds to the amount of $1,030.41, and that, with the amount of crops un-gathered, made the amount of $1,559.94, and after accounting for this amount I find that L. M. Gloor, he having checked out and appropriated the balance of the said partnership funds, as herein shown, was indebted to plaintiff on the partnership business of 1904 in the amount of $3,729.63, and adding to this the indebtedness of $795 of 1903, makes an indebtedness of $4,524.63, and deducting from the amount realized from the sale of the six mules and the horse, after the cost

and expenses of keeping and selling them, the sum of $175, leaves a total indebtedness of $4,349.63; and which represents the amount that is and was due plaintiff by L. M. Gloor after allowing all deductions and credits.

"11.—L. M. Gloor deposited the partnership funds in the two banks of Cooper in the name of Allen & Gloor; and he collected of the individual funds of plaintiff which were in loans to tenants, and deposited the same in the partnership funds in the two banks to the amount of between $200 and $500, and which is not included in the above items of indebtedness.

"Of these funds L. M. Gloor paid the premium on the said policy of $10,000 insurance for 1904, which amounted to $231; he also paid the J. H. Allen loan of $1,000 some time in the fall of that year, and which amounted to the sum of $1,047.12, and obtained a release of the Cooper gin stock and mortgage. He also remitted to his father some amounts during the fall of that year, but the amounts were not shown. He transferred the said gin stock to his wife, the defendant, and afterwards sold it for $1,000, and after paying a commission to the parties for making the sale the balance, $950, was deposited in the First National Bank in her name; and subsequently to this he transferred to the defendant enough of the said funds, $2,050, deposited in the name of the partnership, together with the said sum of $950, to make the sum of $3,000, and which was deposited in her name in said bank, and a while before they left this State they obtained New York exchange for that sum and carried it with them to the State of Missouri, and the defendant still has that money in her possession. Other amounts were likewise paid out by L. M. Gloor of the funds so deposited in the name of the partnership, but the amounts and names of persons are not known. The method by which the transfer and payment of the said funds was made was by the said L. M. Gloor checking them out of the partnership account and depositing them in his individual name and to his own account, and by then checking them out of his said account and applying them as just stated.

"12.—L. M. Gloor gave the defendant a check at one time and some other sums at times for her expense money. He also gave her a horse. In the fall and winter of 1904 he sold all of the said mules except the six head levied on. L. M. Gloor informed plaintiff, when asked for a settlement, that he had not collected all of the rents, and was not ready to settle.

"13.—Being unable to make settlement of the partnership affairs, on January 27, 1905, plaintiff instituted this suit, and sued both L. M. Gloor and his wife, Edna C. Gloor, and alleged substantially the same transaction in the original petition as in the first amended petition, on which this case was tried, except the events happening since the time of the filing of this suit. Plaintiff alleged as against the defendant Edna C. Gloor a fraudulent transfer of the gin stock and the proceeds of the sale thereof to her as against plaintiff's claims. A writ of attachment was issued out of this case at the instance of plaintiff and levied on the six head of mules and one horse. These were afterwards sold under the order of this court at the instance of the sheriff, and after paying the expenses and cost of keeping them and making this

sale, the sum of $175 was realized. At the same time, which was January 27, 1905, a writ of garnishment was issued out of this cause, and was served on the said First National Bank against both defendants, but it was found that they had checked out all of the funds deposited in their name, and the bank made no answer. Both L. M. Gloor and Edna C. Gloor were living in this State and county at the time of the filing of this suit, and were duly served with citation in this State.

"14.—In the month of February following the institution of the suit, both L. M. Gloor and defendant moved to the State of Missouri, and following this and on March 18, 1905, L. M. Gloor died by reason of an accident. He died without issue, and the defendant is his surviving wife, and has not married again.

"Following this, on March 31, 1905, the defendant collected the said $10,000 policy of insurance, and now has that sum of money. He also had a policy of insurance of $1,500 in another company, and this was paid to his mother. These and the above-mentioned funds and property is all of the property that the evidence shows belonging to the said L. M. Gloor and Edna C. Gloor; and it was and is all in the State of Missouri and in the possession of the defendant, and claimed by her as her own, except the said insurance of $1,500, paid to L. M. Gloor's mother, and the said mules and horse and the partnership funds in the bank ($1,030.41) at the time this suit was filed, about which there is no controversy. No letters of administration have been granted, taken out or applied for by any one over the estate of L. M. Gloor, deceased, either in this State or in the State of Missouri.

"15.—The defendant returned to this State to attend the June term of this court in 1905. At that term of the court plaintiff suggested the death of the defendant L. M. Gloor, and asked leave to amend and make necessary parties to this suit.

"On June 9th plaintiff filed his first amended original petition, the one on which this suit was tried; and while the defendant was still in this State plaintiff had her duly served with citation to answer the said amended petition. At that term of court the sheriff applied for and obtained an order to sell the said mules and horse.

"On the trial of this cause plaintiff and defendant duly appeared in person and by their respective attorneys.

"*Conclusions of law.*—1. I conclude and hold that L. M. Gloor was indebted to plaintiff at the end of the first year's partnership business in the sum of $795, and after allowing due and proper credit for the partnership funds and property on hand at the time this suit was filed, I find that L. M. Gloor was and is indebted to plaintiff in the sum of $3,729.63 as a result of the winding up of the second year's partnership business (which amount also contained the said personal funds above mentioned), making a total indebtedness of $4,524.63. After deducting from this sum the amount realized from the sale of the mules, about which there was no controversy, there was left due the plaintiff the sum of, as above found, $4,349.63.

"2. I further find, conclude and hold that the said sum of $3,000, which the defendant alleges that she now has and holds in the State

of Missouri, was composed of the said sum of $950, realized from the sale of the said Cooper Gin Company stock, and the sum of $2,050, and that the loan for which the gin stock was given as collateral, and the said sum of $2,050, was paid by L. M. Gloor, and by him transferring the said funds, as above found, deposited in the partnership, Allen & Gloor, to his own account, and then checking and paying them out to discharge the loan and to the defendant's individual account; and that the defendant carried the said sum of money in New York exchange from this State when she and her husband left, as she alleged she did.

"I further hold and conclude that the deals and transaction by L. M. Gloor, by which this said sum of money, viz., $3,000, was transferred to defendant Edna C. Gloor, was in fraud of the plaintiff's rights; and that the same, as well as the property from which it was obtained, was subject to the said rent for 1904, and the partnership indebtedness of that year, and to the individual funds of the plaintiff; and that plaintiff ought to recover of the defendant Edna C. Gloor the said sum of $3,000, together with legal interest from this date.

"3. I conclude that the said policy of insurance of $10,000 is and was not subject to the plaintiff's indebtedness and claims."

*Opinion.*—The appeal in this case is prosecuted by the defendant, Edna C. Gloor, and we affirm the judgment rendered against her, because the facts show that her insolvent husband misapplied and devoted to his own use partnership assets, a portion of which was $3,000 in money which he delivered to appellant, and which she had in her possession at the time the suit was brought and when the judgment was rendered. (22 Am. & Eng. Ency. Law, p. 134, and authorities there cited.)

That L. M. Gloor resided and died in another State, and that appellant, his wife, is not a resident of this State, are facts which do not appear to be material to appellant's liability. Personal service was obtained upon her in this suit, and the judgment appealed from is a personal judgment against her. Her liability rests upon the fact that she has in her possession and asserts ownership to partnership funds, to which the plaintiff is entitled and for which she has paid nothing.

Not being in the attitude of an innocent purchaser or bona fide holder without notice, Mrs. Gloor has no better title to the $3,000 than her husband had; and the facts show that upon the settlement of the partnership affairs the latter was indebted to the plaintiff more than $3,000.

There is no merit in appellant's contention that, because she has no homestead or other exempted property, she should be permitted to retain the $3,000. One partner can not, by diverting and misapplying partnership funds, build up such title thereto as will entitle his surviving wife to hold them as exemptions or in lieu of exempted property.

Appellant has assigned no sufficient reason for the reversal of the judgment against her, and it will be affirmed.

Appellee has presented in his brief a cross-assignment of error under which he contends that the court erred in not rendering judgment for him for more than $3,000, and in not allowing him interest from

the time he filed his suit. He failed to except to the judgment or otherwise preserve the questions which he now seeks to have decided; and, for this reason, we hold that he has waived the points referred to, and is not entitled to have his cross-assignment of error considered. (Texas & Pac. Ry. Co. v. White, 4 Texas App., Civ. Cas., 451, and cases there cited.)

*Affirmed.*