## ANDERSON et al. v. BYRUM.
### No. 11472.

Court of Civil Appeals of Texas. Dallas.
June 16, 1934.

G. Goodwin Sweatt, of Waxahachie, for appellants.

J. T. Spencer, of Waxahachie, for appellee.

BOND, Justice.

On November 1, 1929, H. M. Anderson and J. F. Pitts executed and delivered to Mrs. A. C. Byrum a promissory note, in the sum of $400, bearing 10 per cent. interest from date thereof, and providing for a contingent attorney fee. Before the institution of this suit, J. F. Pitts died intestate, leaving surviving his wife, Mrs. Mary Pitts, and a son, Marcus Pitts; and Mrs. Anderson died intestate, leaving surviving her husband, H. M. Anderson, and the following children: Mrs. Lela Bracken, Dillie Anderson, James Anderson, Mrs. Mary Pitts, Mrs. Mary Briscoe, Clarence Anderson, and Zole Anderson.

Appellee, Mrs. A. C. Byrum, instituted this suit in the county court of Ellis county against H. M. Anderson, and the above-named heirs of Mrs. Anderson, and J. F. Pitts, to recover on the note and to establish an attachment lien on lot No. 5 of block No. 5, Ligons' addition to Red Oak, Tex. Appellee sought no personal judgment against the heirs.

Appellants answered by general demurrer, general denial, and specially that the property levied upon by writ of attachment was the homestead of H. M. Anderson and wife, and since her death he, as the head of a family, has been using the property as his homestead and for homestead purposes, and it is not subject to attachment; and, in cross-action against the attaching creditor and her bondsmen, appellants alleged, quoting: "That the attachment was wrongfully sued out, illegally issued and illegally levied, and was sued out without probable cause

* * * and for the sole and only purpose of vexing and harassing this defendant; that the purported writ was levied upon the homestead of this defendant, and that under the Constitution and laws of this State, such homestead is protected from such levies; that by reason of the wrongful issuance of this attachment, this defendant has been damaged in the sum of One Thousand ($1,000) Dollars."

Appellee directed exceptions to appellants' pleadings as to the averments of homestead-exemption, and the cross-action for damages; the court overruled the exception as to the homestead plea, and sustained the exception as to the cross-action. Appellants declined to amend. At the conclusion of the testimony, the court peremptorily instructed the jury to find for appellee for the amount of the note, interest, and attorney fee, and for an attachment lien on the property in question.

Appellee attacks appellants' brief as containing no assignment of error on which the propositions of law are predicated for the reversal of the case; the brief fully discloses pertinent matters reflected by the record, which appellants term propositions based on bills of exception. While the brief, strictly in conformity to the rules for briefing, does not carry assignments of error in name, yet the questions or points of which they complain are succinctly incorporated, and are, in our opinion, sufficient for consideration of this court. The strictness with which the rules as to briefs are enforced is largely within the discretion of the court, and the practice in the Courts of Civil Appeals has never been to decline consideration of questions presented simply because of a technical breach. If the brief fairly presents questions and points relied on to reverse or affirm the judgment of the lower court, whether they be called assignments or propositions, they are sufficient for our consideration. The appellate courts are more concerned in the substance of the questions and points raised than the appellation.

Our Supreme Court, in the case of Texas Land Co. v. Williams, 48 Tex. 602, stated that "the main object of the brief * * * is to get something definite—capable of being understood alike by the court and by both parties—to found an argument upon." Briefs are intended to aid the court in reaching a correct decision and to dispose of the cause with the least labor and consumption of time. Thus we think the brief here presented is sufficient to reach the intended object.

Therefore, appellee's motion to strike appellants' brief is overruled.

Appellants contend that the trial court erred in instructing the jury to return a verdict in favor of appellee, establishing an attachment lien on their homestead, and accordingly entering judgment. It has long been held by the courts of this state that trial courts cannot direct a verdict, unless no other verdict can be rendered than that directed. The real estate on which the attachment lien was directed, being the homestead of the attaching debtors, is raised by the pleadings, and reflected in the evidence; thus, the homestead vesture was an issuable fact for the determination of the jury.

On this phase of the controversy the testimony of Anderson shows that, on November 15, 1924, he and his wife exchanged by deed their homestead for the property in controversy; that at the time of the conveyance the property was rented, the rental contract not expiring until June 1, 1925; that it had never been occupied by himself and family, but the rents and revenues therefrom were used toward their subsistence; that he could not, during the intervening years, make a livelihood by living on the place, as his work compelled him to live elsewhere, on property of his employers; that he was the head of a family, purchased the property for a home; and that it was all the property he possessed, and stated that "whenever the time comes that I can make a living on the place, I intend to move on it and use it as my home. I have kept the place rented from year to year to different parties, and the same is now rented."

This testimony is not only undisputed, but substantially corroborated by testimony of other witnesses, leaving, we think, little, if any, doubt as to the intention of the owners and the use to which the property was subjected. The land acquired being the only real estate owned by Anderson and wife, taken in exchange for their home, and their intention of making it their homestead, when they were able to do so, and Mr. Anderson's employment permitted, coupled with its continuous use for the subsistence of Anderson and his family, the only purpose for which it could then be used, presents an issuable fact. The mere fact that he did not occupy it and could give no definite time as to when he could do so, does not of itself divest the property of its homestead character. Where property is purchased for the purpose of a home, with a view of occupancy, and its use, revenue, and profit are employed for

homestead purposes, such intention and use impresses the property with homestead exemption.

The question of the intention of the parties is usually one for the jury, where the facts and circumstances are such that the occupancy of the premises cannot be had, or is not advisable, and the premises are used for the purpose of a home. In the case of Broadland v. Bank, 15 S.W.(2d) 112, 113, the San Antonio Court of Civil Appeals held, with full citation of authorities, that: "In Texas actual occupancy of land is not absolutely essential to impress property with the homestead character, but property may become a home by intention when such intention is accompanied by unmistakable acts that evidence the designation of a homestead." So, in the instant case, we are of opinion that the testimony raises the issue of the homestead character of the property in question, and that the trial court erred in instructing the jury against appellants' claim.

█ Appellants further assign error on the action of the trial court, in sustaining the exception to the above-recited plea in cross-action for damages growing out of the wrongful issuance of the writ of attachment. It may be conceded that the allegation of damage is too general to sustain any specific element of loss which appellants may have sustained; however, if the attachment was illegally issued, and without probable cause, levied upon property belonging to the attaching debtor, the aggrieved party is entitled at least to nominal damages; therefore, manifestly, the averment is at least sufficient for that purpose and the trial court was not authorized in sustaining the exception and striking the cross-action from the pleadings, because of the failure to enumerate the elements of damage which they may have sustained.

The evidence bearing upon this issue discloses that the attaching creditor, in securing the writ of attachment, made the statutory affidavit "that they (appellants) have disposed of their property, in whole or in part, with intent to defraud their creditors," and, as evidence of that indicia, testified, quoting, "this note is past-due and unpaid. I have tried to collect this note from Mr. Anderson and the Pitts estate, but they have failed and refused to pay same. Mr. Anderson has been farming most of the time since he has lived in the Red Oak Community, he makes good crops of cotton and feed stuff, he also works at the Red Oak gin in the fall and makes good money there. He has been living with Mr. Ligon for four or five years, looking after his stock, and making a crop on Mr. Ligon's place. I have spoken to Mr. H. M. Anderson about making a payment on said note, but he has failed to make such payment, stating that he was unable to do it. * * * Mr. H. M. Anderson has refused to make any payment on this note for several years, and has been selling everything that he has made on the farm and refused to pay said debt, and I thought that he would dispose of everything that he had, and in doing so would defraud his creditors; that is the reason I sued out the writ of attachment."

█ The above-related testimony, in our opinion, is not sufficient to found an affidavit that appellants have disposed of their property with the intent to defraud their creditors; therefore, the attachment was wrongfully issued, and the amount of damages is for the determination of a jury.

It is the settled law of this state that the failure of a debtor to pay a debt, although he may be financially able to do so, does not authorize the suing out of an attachment (Blum v. Stein, 68 Tex. 608, 5 S. W. 454), and where the affidavit is made as here, based alone on such failure, the validity of the attachment lien fails, the attachment depending upon the truth of the ground asserted in the affidavit at the time it was made (Brady-Neely Grocer Co. v. De Foe [Tex. Civ. App.] 169 S. W. 1135). Therefore, if the affidavit was wrongfully made, which evidently it was, and by the issuance and levy of the writ of attachment the property was seized, the one whose property was taken is entitled at least to nominal damages. Brown v. Bridges, 70 Tex. 661, 8 S. W. 502; Farrar v. Talley, 68 Tex. 349, 4 S. W. 558; Bartley v. Radford (Tex. Civ. App.) 15 S.W.(2d) 46; Comer v. Powell (Tex. Civ. App.) 189 S. W. 88; Pate v. Vardeman (Tex. Civ. App.) 141 S. W. 317.

We have considered, in view of another trial, the further propositions urged by appellants, and they are expressly overruled, and from what we have said, with reference to the above, it follows that the judgment of the trial court should be reversed and remanded, and it is so ordered.

Reversed and remanded.