AROUANI et al. v. BATTISTIC.

No. 12553.

Court of Civil Appeals of Texas. Dallas.

Jan. 22, 1938.

Rehearing Denied Feb. 19, 1938.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellants.

John A. Erhard and Dick P. Wood, both of Dallas, for appellee.

LOONEY, Justice.

This suit was brought for the dissolution and settlement of a partnership, and, as an incident thereto, plaintiffs sought the appointment of a receiver. A chronological statement of the events giving rise to the lawsuit and the progress of the litigation will, we think, lead to a correct understanding and decision of the questions presented.

The partnership agreement between Abdullah Arouani and Khalil Arouani (brothers), first parties, and Charles Battistic, second party, was entered into at San Diego, Cal., on March 12, 1936. Its style was "Egyptian Art Gallery, A. & K. Arouani & Company"; the business to be pursued was the sale of merchandise, particularly Oriental and Egyptian merchandise—rugs, etc. First parties agreed to contribute to the firm merchandise of the value of $15,000, and were to own a 50 per cent. interest; second party agreed to contribute $10,000 in merchandise and $5,000 in cash, and was to own a 50 per cent. interest. The business was to be conducted jointly by Khalil Arouani and Battistic (Abdullah Arouani, during the period here involved, resided in Cairo, Egypt). First parties agreed to place with the partnership from time to time merchandise "owned by them in connection with their other business" (the "other business" referred to being A. & K. Arouani, Inc., a California corporation), to be held on consignment and sold by the partnership; stipulating for monthly audits, "and that, after the payment of expenses of operation, twenty (20) percent of the money derived from the sale of merchandise was to be paid monthly to A. & K. Arouani, to apply on the purchase price of goods delivered on consignment." The contract contained other provisions, not deemed material here, concluding as follows: "This agreement shall be in force and effect as soon as the stocks of merchandise to be contributed, as herein provided, have been approved and accepted and the cash to be paid in has been paid into the funds of said partnership."

On May 10, 1936, the parties entered into a supplemental agreement in writing, stating: "That the stock of merchandise on hand partly checked amounts to approximately $42,831.00 to which shall be added 15% per cent to be considered as duty and freight plus $800.00 that Charles Battistic still owes to complete his share of $15,000.00, which makes a grand total of $50,055.65.

Thus out of the aforesaid total amount Charles Battistic and Khalil Arouani will have an equal share in the company of $15,000.00 each, and the balance of approximately $20,000.00 will be considered as merchandise consigned to the Company by Arouani of Cairo, Egypt."

While the agreement stated that the consigned merchandise would be considered as consigned to the company by Arouani of Cairo, Egypt, nevertheless, it is a fact that the merchandise consigned was not by Arouani of Cairo, Egypt, but was from the stock of merchandise formerly owned by A. & K. Arouani, Inc., of Cal.

In July of 1936, in Dallas, Tex., after referring to the partnership agreement of March 12, 1936, executed at San Diego, Cal., the parties stated in writing that, in furtherance of the partnership, they had rented space and obtained a concession from the Texas Centennial Central Exposition, for the purpose of operating therein; that second party (Battistic), in addition to his original investment, had furnished $5,000 to the partnership, and was willing to furnish up to $5,000 additional, the money to bear interest at 6 per cent. per annum; providing a method of payment out of "income received from the sale of any and all merchandise by said partnership, after deducting necessary expenses, and after the payment of the twenty (20) percent due on the consigned merchandise," etc. Omitting several immaterial provisions, the writing continues: "It is further agreed that Khalil Arouani and Abdullah Arouani obligate themselves, during the remainder of the Texas Centennial Central Exposition, to furnish and keep on hand for the benefit of said partnership merchandise on consignment of the value of not less than Fifteen Thousand ($15,000.00) Dollars at prices, kind and quality acceptable to all parties herein, and that at the present time it is understood that the merchandise now held on consignment by said partnership is acceptable and is hereby accepted." The instrument concludes with an affidavit by Khalil before a notary public of Dallas county, to the effect that he executed the agreement on behalf of his brother, Abdullah, and was fully authorized to contract in such capacity. The above comprehends the substance of all written agreements executed by the parties pertaining to the partnership.

In executing the different instruments, and in all dealings in regard to the business, and later in instituting and prosecut-

ing the suit for dissolution of the partnership and settlement of its affairs, Khalil acted both for himself and his brother, Abdullah, who throughout the period covered by the events involved resided in Cairo, Egypt. It will also be noted that the name of Marie, wife of Khalil (whose intervention will hereinafter be discussed), nowhere appears in either of the instruments executed by the parties, nor was her name disclosed in any of the pleadings filed, until after March 18, 1937 (the date of the first decree entered).

The record discloses that the business was operated at a loss; that, the active parties—Khalil and Battistic—having had serious disagreements, becoming very antagonistic, Khalil instituted this suit on December 10, 1936, in the name of himself and his brother, Abdullah, as plaintiffs, against Charles Battistic, defendant, for the dissolution of the partnership, for an accounting and settlement, and, as an incident, asked for the appointment of a receiver, to take charge of and sell the assets of the partnership, and on final hearing that the plaintiffs recover $15,000, or the sum to which they are shown to be entitled. The court appointed Max Rosenfield receiver, who, under the orders of court, administered the assets, as hereinafter shown.

On March 17, 1937, Battistic filed an amended answer, denying plaintiffs' allegations, and in a lengthy cross-action against A. & K. Arouani, alleged that the partnership was launched as provided in the articles of agreement, that A. & K. Arouani placed with the partnership for sale consigned merchandise of the approximate value of $20,000, as provided in the agreement; that the partnership was indebted to him (Battistic) in the sum of $7,000 and interest, for money loaned; that Khalil Arouani had abstracted and appropriated to his own use over $5,000 in cash belonging to the partnership, also a large quantity of merchandise of the value of $9,000, which should be accounted for in the partnership settlement; wherefore, Battistic prayed that he recover $16,026.72, and that the same be given the status of a prior and preferred claim against the assets in the hands of a receiver, for half the remainder of the assets, for costs of suit, and relief general and special.

On February 4, 1937, Khalil filed a supplemental pleading (styling himself plaintiff), in which he answered the cross-action of Battistic, and set up a claim against the partnership, alleging, in substance, that the consigned merchandise of the value of approximately $20,000 and $2,400 additional obtained from Cairo, Egypt, did not belong to the partnership; wherefore, he prayed that the receiver be directed to separate the consigned merchandise from the merchandise belonging to the partnership, and that the consigned merchandise be set aside to Arouani of Cairo, Egypt, etc.

On March 5, 1937, Khalil also filed a pleading styling himself plaintiff, in which he prayed that the court set aside to him certain merchandise, fully described in sheets attached to the pleadings, marked Exhibit A (being an inventory of seven pages), and in connection with the application alleged that the merchandise consigned to the partnership was of the value of $20,000, was never partnership property, nor properly in the hands of the receiver; wherefore, he prayed that the receiver be directed to deliver the merchandise to him (Khalil) free of all claims of every kind, and that it be not charged with any administration expenses; also alleged that merchandise of the value of $2,513.85, shipped to him from Egypt, had never been paid for by the partnership; therefore, prayed that it also be set aside to him free of all administration expenses. The pleading also contained other allegations not deemed material here.

On March 18, 1937, after a full hearing, the court rendered a lengthy judgment of fact findings, orders final in nature, and orders administrative, in substance as follows: (a) That the partnership of Abdullah and Khalil Arouani and Charles Battistic, plaintiffs and defendant, owned and were entitled to recover 47.61 per cent. of all goods, wares, and merchandise of every kind and character held or claimed in the possession of Max Rosenfield, the receiver; (b) that Arouani, Inc. (the California corporation), owned and was entitled to recover 47.61 per cent. of said goods, wares, and merchandise; (c) that A. & K. Arouani, a partnership doing business in Cairo, Egypt, composed of Abdullah and Khalil, was entitled to have and recover 4.78 per cent. of said goods, wares, and merchandise. Arouani, Inc., of California and A. & K. Arouani of Egypt, mentioned in the decree, were not parties to the litigation as legal entities, but it is obvious that the interests in the assets, being administered, represented by

these concerns, belonged, so far as the record disclosed at the time of trial, either to Abdullah and Khalil, or to Khalil alone. The judgment proceeds, (d) that the Egyptian Art Gallery (partnership) was entitled to recover $1,000 against the firm represented by A. & K. Arouani of Egypt, which amount was to be added to the 47.61 per cent. theretofore awarded to the partnership; (e) that Charles Battistic was entitled to recover out of all the assets of the partnership (Egyptian Art Gallery) "as a first and prior claim the sum of $14,267.02, being the unpaid balance of a loan by Battistic to the partnership of $7,000 and interest, and the sum of $7,024.27, the amount of cash and merchandise belonging to the partnership, appropriated by Khalil"; and (f) that A. & K. Arouani (Abdullah and Khalil) of Egypt were entitled to recover $775 from the assets of the Egyptian Art Gallery.

The court further found that "all of the property and assets of the various persons and parties at interest herein have been commingled and are incapable of division and partition, and should be sold by the receiver herein, and the proceeds of sale thereof divided as hereinafter more fully set out." Therefore, the court ordered the receiver to sell, either at public or private sale, all the goods, wares, and merchandise in his possession, including the consigned merchandise.

Among other things, the court ordered the receiver, out of the proceeds of the sale of the merchandise, to first pay all court costs and expenses of the receivership, and out of the remainder to pay the partnership (Egyptian Art Gallery) 47.61 per cent.; that Arouani, Inc. (the California corporation), was also entitled to receive 47.61 per cent. of the remainder of the proceeds, to be impounded and held by the receiver subject to the future orders of court, said interest representing the consigned merchandise held by the partnership and ostensibly was owned by Abdullah and Khalil; that A. & K. Arouani of Egypt, a partnership composed of Abdullah and Khalil, operated at Cairo, Egypt, was entitled to 4.78 per cent. of said proceeds, Abdullah and Khalil being the ostensible owners, the court ordered same impounded and held by the receiver subject to further orders. These orders were followed by one directing the receiver, out of the fund belonging to A. & K. Arouani of Egypt, to pay the Egyptian Art Gallery (partnership) $1,000, in addition to the 47.61 per cent. theretofore adjudged to the partnership; that the receiver pay defendant Charles Battistic, out of the funds belonging to the Egyptian Art Gallery, $14,264.02; that he pay A. & K. Arouani of Egypt (Abdullah and Khalil) out of the fund belonging to the Egyptian Art Gallery the sum of $775; that, after paying said amount, the remainder of the proceeds, if any, belonging to the Egyptian Art Gallery (partnership) shall be paid to A. & K. Arouani (Abdullah and Khalil) 50 per cent., and to Charles Battistic 50 per cent. The judgment was neither excepted to nor appealed from by either of the parties.

On April 13, 1937, at the term of court immediately ensuing, the properties having been sold by the receiver and the sale confirmed by the court, Battistic filed a motion for an order directing the receiver to distribute and pay out the proceeds of the sale in accordance with the judgment of March 18, 1937, alleging in this connection that, according to the previous adjudication, he was entitled to recover from the assets set apart to the Egyptian Art Gallery, as a first and prior claim, the sum of $14,264.02, being the unpaid balance with interest of his loan to the partnership, aggregating $7,239.75, and $7,024.27, the amount of cash and merchandise belonging to the firm, appropriated by Khalil to his own personal use, or for the use and benefit of his brother, Abdullah, who was at the time in Cairo, Egypt. Battistic also alleged that the share of the proceeds of the merchandise awarded the partnership (Egyptian Art Gallery) was insufficient by over $7,000 to satisfy in full his preferred claim; that the receiver held, subject to orders of court, the 47.61 interest in the proceeds adjudged to Arouani, Inc.; that the same belonged to Abdullah, Khalil and Marie—Marie being the wife of Khalil; that the partnership assets ($7,024.27) appropriated by Khalil were sent to Abdullah and Marie; therefore, appellee prayed that, under the doctrine of contribution, the fund set aside to Arouani, Inc.—belonging to Abdullah, Khalil, and Marie—be applied as a credit on appellee's claim, concluding as follows: "Wherefore, premises considered, the defendant, Charles Battistic, prays the Court for an order directing the receiver, Max Rosenfield, to pay to him the sum of $14,264.02, or as much of said amount as said receiver now has in his hands; said sum to be ap-

plied on the judgment heretofore recovered by said Charles Battistic on March 17, 1937; and for such other and further relief whether legal or equitable to which he may show himself entitled."

At this juncture and in this situation, on April 17, 1937, Khalil, in the name of his wife, Marie (who was then in Cairo, Egypt, and had been during the period of the happenings here involved), filed a plea of intervention, alleging that she had not previously been a party to the litigation, that she was entitled to all proceeds arising from the sale of the merchandise theretofore awarded by the court to Arouani, Inc. (California), and to A. & K. Arouani of Egypt (a partnership composed of Abdullah and Khalil), and was entitled to a first lien upon the proceeds awarded to the Egyptian Art Gallery (partnership).

We do not deem it necessary to set up in detail Marie's allegations in regard to her claim, because, as we view the matter, whatever interest she had in the merchandise or its proceeds, although not a party to the litigation in name, nevertheless, in legal contemplation, was a party by and through her husband Khalil, and, as hereinafter shown, was concluded the same as he was concluded by the judgment of March 18, 1937, heretofore set out.

On April 14, 1937, the court heard Marie's plea of intervention, joined pro forma by Khalil her husband, also heard Battistic's motion for distribution of the fund in the hands of the receiver in accordance with the judgment of March 18, 1937. After reciting that the receiver had realized $18,000 from the sale of the merchandise, and after paying all court costs and expenses of the receivership, held for distribution the sum of $13,653.23; the court then ordered the receiver to pay the Egyptian Art Gallery (partnership composed of Abdullah and Khalil Arouani and Charles Battistic) 47.61 per cent. of the amount remaining after paying costs, expenses, etc.—being $6,500.26 plus 4.78 per cent., $652.71, awarded by the judgment of March 18, 1937, to A. & K. Arouani of Egypt, but directed same to be paid to the Egyptian Art Gallery, in addition to the 47.61 per cent., making a total of $7,152.97, all of which the receiver was directed to pay to appellee on his preferred claim, which amounted to $14,264.02, thus leaving a hang-over of more than $7,000 unpaid. The court also found that Arouani, Inc., was entitled to 47.61 per cent., or $6,500.26, the remainder of the fund in the receiver's hands, representing the proceeds of the consigned goods; said fund was divided as follows: Khalil Arouani 25 per cent., or $1,625.06; Abdullah Arouani 25 per cent., or $1,625.06; Marie Arouani, wife of Khalil, 50 per cent., or $3,250.13, as her separate property. The judgment also recognized and enforced the right of appellee to contribution against Khalil, concluding as follows: "It is therefore ordered, adjudged and decreed that the Receiver is directed to pay to Charles Battistic the sum of $7,152.97, which said sum is all of the money awarded to the Egyptian Art Gallery, a partnership. It is further ordered, adjudged and decreed that the Receiver is directed to pay Charles Battistic the sum of $1,625.06, hereinbefore awarded to Khalil Arouani. It is further ordered, adjudged and decreed that the Receiver is directed to pay into the registry of the Court the balance in his hands after above payments to Charles Battistic. It is further ordered, adjudged and decreed that the Clerk of this Court is directed to pay to Abdullah Arouani the sum of $1,625.06, and he is directed to pay to Marie Arouani as her separate property the sum of $3,250.13. To all of which action of the court all parties excepted and gave notice of appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District at Dallas, Texas."

Thus, laboriously, we have reached the assignments of error. In so far as Marie Arouani is concerned, the appeal is narrowed to this question: Was she concluded by the result of the litigation between Khalil her husband and Charles Battistic? If so, her plea of intervention is altogether futile. As before shown, both Abdullah and Marie resided in Cairo, Egypt, during the entire period of time covered by the transactions involved. Marie was not known to be an interested party, was a stranger to the written contracts entered into and to the litigation prior to the plea of intervention in her name, filed April 17, 1937. In view of this situation, her residence being in Cairo and the business, in charge of her husband, being in the United States, necessarily, he had to act for her in all transactions involving her interest; not only in making contracts involving her interest, but in conducting the business, and in litigation, the outgrowth of business operations.

The suit for dissolution and settlement of the partnership was brought by Khalil in the name of himself and his absent brother Abdullah; later Khalil filed supplemental plead

ings, claiming ownership of the consigned merchandise, individually, praying that the same be segregated from the other merchandise and discharged from the receivership, free of all costs and administration expenses. Attached to the supplemental pleading, in which he set up the claim, are seven sheets, describing in detail the consigned merchandise; and these sheets are identical with the seven sheets attached by him to the plea of intervention later filed in the name of his wife; in other words, in the litigation prior to the judgment of March 18, 1937, Khalil claimed as his own the identical property, later claimed for his wife in the plea of intervention.

█ There are two reasons why we believe Marie was concluded by the judgment of March 18, 1937, and this without regard to the extent of her interest, or howsoever acquired. In view of the circumstances, we think the conclusion inescapable that, in all transactions involving her interest, Khalil acted not only for himself but was authorized to act for his wife as agent. His testimony leaves no doubt on this point. Asked when it occurred to him to claim that the property involved belonged to his wife, he answered, "Because I am her husband and I have the right to transact her business. I have from her a signature to transact her business." Asked why he filed an application to have the consigned property surrendered to him, answered, because he had a power of attorney from his wife. This testimony accords with the inescapable conclusion arising from the undisputed facts and circumstances. In our opinion, she was an undisclosed principal, hence bound by the acts of Khalil her agent, in entering into contracts, in conducting the business, and we know of no reason why an undisclosed principal would not be bound by the result of ensuing litigation, conducted for the purpose of conserving or benefiting the property rights involved. See Agency, 2 Am. Jur. p. 308, §§ 393, 394.

However, we do not deem it necessary to rest the decision on the doctrine of undisclosed agency. The statute, Vernon's Ann.Civ.St. art. 1983, in specific terms authorizes the husband to sue either alone or jointly with his wife for the recovery of her separate property; it reads: "The husband may sue either alone or jointly with his wife for the recovery of the separate property of the wife." This statute was enacted in 1840, and has remained unchanged. It was referred to by the Supreme Court in the early case of Cannon v. Hemphill, 7 Tex. 184, 200, as follows: "The law constitutes him [the husband] the agent, or attorney, of his wife, in this particular; and his acts in this capacity, done in good faith, must be binding and conclusive upon his principal. She would be entitled to no redress for errors in the proceedings, of which he could not avail himself." So, if it be true, as Khalil now claims in the plea of intervention filed in the name of his wife, that the consigned merchandise was her separate property, nevertheless, in his own name he sought its recovery in the prior litigation, sought to have it segregated and delivered to him, and, failing in this, we think his wife was concluded by the judgment.

█ We are of opinion that the judgment of March 18, 1937, was final in the respects in which the court established the respective interests of the parties in the property; in holding that the merchandise was so commingled as not to admit of segregation, in ordering sale of the commingled stock of merchandise as a unit; in establishing the claim of Battistic, in classifying same as a preferred claim against the partnership assets; and in ordering the receiver to pay the amount awarded the partnership on his claim. This judgment was rendered during the term of court just prior to the term at which, on April 24, 1937, the court distributed the proceeds of the sale of the merchandise. The judgment of March 18th was neither excepted to nor appealed from; hence we conclude that, in all respects, it became final and conclusive in respect to the matters adjudicated—in fact, it is conceded in the brief filed on behalf of Khalil and Abdullah that the judgment is final in nature.

█ That there may be more than one final and appealable judgment in the same case has been settled in this state. See Waters-Pierce Oil Co. v. State, 107 Tex. 1, 106 S.W. 326. Thus, a decree of partition (same in effect as the judgment under consideration) that finally determines the rights of the parties is final and appealable; and on division of the property in accordance with the former order determining the rights of the parties (as in the instant case) another final judgment is rendered from which an appeal may be taken. See 3 Tex.Jur. 109, § 53, and authorities cited; also Castillo v. Farias, Tex.Civ.App., 64 S.W.2d 989, and authorities cited (writ refused).

The court having found that the partnership was indebted to Battistic in the sum of $7,239.75 for money loaned, also that he was entitled to $7,024.27, the equivalent of cash and merchandise belonging to the firm, appropriated by Khalil, aggregating $14,264.02, approved as a prior claim, the court, in distributing the proceeds of the sold merchandise, ordered the receiver to pay Battistic on his preferred claim all assets belonging to the partnership, but this was insufficient to satisfy the claim in full, leaving unpaid more than $7,000; and, the evidence showing, without dispute, that cash amounting to more than $5,000, belonging to the partnership and abstracted by Khalil, was sent to his brother Abdullah in Cairo, Egypt, we think it necessarily follows that Battistic was entitled to contribution from both Khalil and Abdullah. The court recognized the right of Battistic to contribution as against Khalil, and ordered the share of the proceeds of the merchandise awarded him ($1,625.06) paid to Battistic on his preferred claim, but refused contribution as against Abdullah. In this, we think the court erred, it being undisputed that he received over $5,000 of partnership assets through his brother Khalil.

Appellee complains of the action of the court in this respect and, while the complaint is styled "counter proposition," yet essentially it is a cross-assignment of error and will be so treated. The right of a partner, on dissolution and settlement of the partnership, to contribution against his partners for money furnished the partnership, or for funds or assets of the partnership abstracted, is an established doctrine of equity, recognized in this state. Many authorities could be cited, but the following, we think, are fairly illustrative of the doctrine: See 10 Tex.Jur. 549, § 11; 32 Tex. Jur. 306, § 56, § 198, p. 526; Gloor v. Allen, 47 Tex.Civ.App. 519, 105 S.W. 539; Smith v. Green, Tex.Civ.App., 243 S.W. 1006; Victor Refining Co. v. City Nat. Bank, Tex. Civ.App., 263 S.W. 622. So, we sustain the cross-assignment of error, complaining of the action of the court in refusing Battistic contribution as against Abdullah.

Appellants contend there is an irreconcilable conflict between the judgments of March 18th and April 24th; we do not think so. The judgment of March 18th established the interests, respectively, of the parties in the property to be divided, and directed distribution accordingly. It did not deal directly with the right of Battistic to contribution against his partners, because at that time the merchandise had not been sold by the receiver, hence the specific amount to be awarded each interested party was not known and prior to the sale could not have been ascertained—yet, a proper basis for contribution was laid in the decree of March 18th in the court's findings, establishing the amount and priority of Battistic's claim.

In same form and by same token, Battistic insists that the court erred in refusing him contribution against Marie Arouani. To this proposition we cannot agree. Marie was not a member of the partnership and, although doubtless received from her husband some of the partnership assets withdrawn by him, yet it is not contended that the share of the proceeds of the consigned merchandise allotted to her ($3,250.13) was ever partnership assets. We think, for reasons heretofore stated, she was concluded by the judgment of March 18th against her husband, in so far as he sued in his own name for recovery or for the benefit of her property; however, we think it would extend the equitable doctrine of contribution entirely too far to hold that, under the facts and circumstances presented, Marie should be held liable to contribute to the payment of Battistic's preferred claim against the partnership of which she was not a member, therefore overrule this contention of appellee.

We have carefully considered all assignments and cross-assignments of error urged by the parties, with the result that they are overruled, except the cross-assignment by appellee Battistic, complaining of the refusal of the court to allow him contribution against Abdullah, which we sustain, and accordingly contribution against Abdullah is allowed, and the receiver is directed to pay the share of the fund allotted Abdullah ($1,625.06) to Battistic on his preferred claim, hence the judgment below is accordingly reformed, and as reformed is affirmed.

Reformed and affirmed.

### On Rehearing.

In the motion for rehearing by Khalil and Abdullah Arouani (paragraph 8, page 3), the position is assumed that the judgment of March 18, 1937, mentioned in our original opinion, was not a final judgment and did not become so until after the judgment of April 24, 1937, was rendered at the subsequent term of court.

This position, seemingly, is in conflict with the position taken in the brief filed for appellants prior to original submission. At page 5 of the brief appellants say: "The plea of contribution was not filed until April 13, 1937, which was long subsequent to the date of the original judgment. It may be argued that said plea only had to do with the previous awarding by the Court of a prior claim in favor of appellee Battistic; however, it contained new matters and new evidence was introduced concerning same and the subsequent order of April 24, 1937, was certainly contrary to and in conflict with the original judgment of the Court, dated March 18, 1937. The caption of the transcript shows that the term of Court at which the subsequent order was rendered began April 12, 1937, which was a different term to that during which the original decree was entered. The above authorities firmly establish the proposition of law that there cannot be any amendment or correction of a prior judgment at a subsequent term which involves correction of a judicial error. Without further argument, we most respectfully submit that the two orders of the Court are in hopeless conflict with each other."

However, without regard to this seeming inconsistency, we think the judgment of March 18th, for reasons stated in our original opinion, was final and appealable in the respects mentioned, and, as it was not appealed from, became binding upon the parties.

In response to both the pleadings and proof, the trial court, in its judgment of April 24, 1937, allowed Battistic contribution against Khalil Arouani, but refused contribution as against Abdullah. We reversed the judgment in this respect, allowing Battistic contribution also against Abdullah, and reformed and affirmed the judgment accordingly. With reference to our action in this respect, appellants—Khalil and Abdullah—contend in their motion for rehearing, paragraph 1, that: "This Honorable Court erred in holding that appellee was entitled to the fund allotted to Abdullah Arouani in the sum of $1,625.06, because there is no cross assignment of error filed in this court or the trial court authorizing such recovery"; they also contend that we erred in allowing contribution against Abdullah, because not authorized by the evidence.

As to the latter contention, we are content to rest the decision on the reasons given in the original opinion. As to the first, that is, that Battistic did not cross-assign error on the action of the court in refusing him contribution as against Abdullah, we stated in the original opinion that, "Appellee complains of the action of the court in this respect and, while the complaint is styled 'counter proposition,' yet essentially it is a cross-assignment of error and will be so treated." In the discussion, however, we did not set out the cross-assignment (styled "counter proposition"), but, in view of the contention now made that appellee simply urged a counter proposition, and not a cross-assignment, and that the court was not justified in allowing Battistic, as a credit on his preferred claim against the partnership, the fund ($1,625.06) allotted to Abdullah, we here set out the contention of Battistic, styled "counter proposition," in the form in which the same was urged, as follows:

"Counter Proposition Number 6: Where the undisputed evidence shows that Khalil Arouani, appellant, one of the partners in the Egyptian Art Gallery, unlawfully appropriated and converted funds belonging to said partnership and transmitted said funds to his brother, Abdullah Arouani, also an appellant herein and one of the partners of the Egyptian Art Gallery, on a final accounting of the partnership of the Egyptian Art Gallery, Charles Battistic, the other partner in said partnership and the appellee herein, is entitled to contribution from Abdullah Arouani to the extent of the unlawful withdrawal."

"Counter Proposition Number 7: Where the undisputed evidence shows that Charles Battistic, appellee, owned one half of the partnership known as the Egyptian Art Gallery, and that he as an individual had loaned said partnership $7,000.00, which had not been repaid, that Khalil Arouani had withdrawn and sent to Abdullah Arouani and Marie Arouani, appellants, $5,072.65 and $4,500.00 in cash from the partnership funds, and where undisputed evidence further shows that on a partnership accounting the funds awarded the Egyptian Art Gallery are insufficient to repay the said Battistic, appellee, the trial court correctly gave the appellee judgment for contribution against Khalil Arouani and erred in failing to give said Battistic judgment for contribution against Abdullah Arouani and Marie Arouani."

Counter proposition No. 6, in our opinion, is an appropriate proposition, based

on the assignment contained in No. 7, to the effect that, on the facts as recited in the assignment, "The trial court correctly gave the appellee judgment for contribution against Khalil Arouani, and erred in failing to give said Battistic judgment for contribution against Abdullah Arouani. * * *" In alleging that the court erred in failing to give judgment for contribution against Abdullah Arouani, a distinct complaint was made in regard to the action of the trial court; lacking only in an appropriate name to satisfy the most punctilious that appellee was cross-assigning error as against Abdullah Arouani. We think it immaterial that the contention was styled "counter proposition," because, as repeatedly held, the courts will look to the substance, and not merely to the form, in determining matters of this kind. See Heatley v. W. P. Ponder & Sons, Tex.Civ. App., 40 S.W.2d 951, 952; Bankers' Lloyds v. Seymour, Tex.Civ.App., 49 S.W.2d 508; Anderson v. Byrum, Tex.Civ.App., 73 S. W.2d 571, 572.

Appellants also contend that Battistic is not entitled to complain of the action of the court in the respect under consideration, because "no appeal bond was filed by Battistic and no complaint whatever made, except in his brief under a counter proposition." As against appellant, Abdullah Arouani, we think Battistic was entitled to cross-assign error, without perfecting an independent appeal. 3 Tex.Jur. § 609, p. 873.

After carefully considering the motions for rehearing by the parties, appellants— Khalil, Abdullah and Marie Arouani—and appellee Battistic, the same are overruled.

Motions for rehearing overruled.