## BOX v. RUNDELL.

### No. 3942.

United States Court of Appeals
Tenth Circuit.

Jan. 6, 1950.

Robert H. LaFollette, Albuquerque, N. M. (Sumner Stanley Koch, Albuquerque, N. M., was with him on the brief), for appellant.

Otto Smith, Clovis, N. M., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

The appellee [1] herein commenced an ejectment action in the United States District Court for the District of New Mexico against the defendant, W. L. Box, and ap-

---

1. Hereinafter referred to as Rundell or plaintiff.

pellant,[2] Mary Box, husband and wife. The purpose of the action was to recover possession of 240 acres of land in Roosevelt County, New Mexico, and damages. Mary Box filed an answer including a counterclaim based upon fraud and false representations of Rundell in a previous real estate transaction. The court, after hearing evidence, dismissed the counterclaim of Mary Box upon the grounds that it was barred by a judgment in another action under the doctrine of res judicata, and she appeals from that dismissal.

During the year 1946, Rundell was the owner of a ranch in Freemont County, Colorado, and Mary Box was the owner of the 240 acres of land in Roosevelt County, New Mexico, which land is now the subject of the ejectment suit. After negotiations, it was agreed between Rundell and the defendant, W. L. Box, that Rundell would transfer his ranch in Colorado to W. L. Box, and W. L. Box would transfer the New Mexico land to Rundell. There was additional cash consideration and in addition W. L. Box agreed to deliver to Rundell "endorsed notes" totalling $5,000. Mary Box was not a party to the agreements, but she was present during the negotiations and testified that she authorized her husband to act for her, and that he was representing her in the transaction. She later signed the necessary deed to convey her New Mexico property to Rundell in accordance with the terms of the agreements. The Colorado ranch was conveyed to Mary Box and her husband as joint tenants and they took possession of the same and proceeded to operate it. After the deal was completed, a dispute arose as to the representations that Rundell had made during the negotiations concerning grazing rights attached to the ranch.

Some time thereafter Rundell commenced an action against W. L. Box in the District Court of Fremont County, Colorado, wherein he sought a judgment requiring the delivery of the notes described in the agreements and for damages. Box removed this action to the United States District Court for the District of Colorado.[3] In his answer to the complaint, W. L. Box included a counterclaim in which he alleged fraud and false representations of the plaintiff (the appellee here) in detail. He asked for a rescission of the agreements and a return of the consideration, including the property of his wife, and offered to return the Colorado ranch to Rundell and also asked for substantial damages. In a second counterclaim in that action, additional damages were asked because of the failure of the plaintiff to deliver the grazing rights described in the counterclaim. Upon trial to the court without a jury, judgment was rendered against W. L. Box on his counterclaims. This judgment became final. During the pendency of the Colorado action, attempts were made to settle the case through arbitration. Mary Box testified that her husband represented her in all negotiations for the exchange of properties and in the arbitration proceedings while the suit was pending. Upon questioning by the Court concerning the arbitration, she said, "I had expressed my opinion that I would like it settled by arbitration rather than through the Court, if we could get a quicker settlement;" and she understood that her rights were involved in the arbitration and she was available to execute any papers necessary to carry out any agreement reached by arbitration. She was a witness in the case and sanctioned the proceedings and was willing for the rescission of the contract and return of her property which her husband was seeking in his counterclaim. Her interests were not merely incidental to the outcome of the suit, her rights were actually being determined.

 In this case Mary Box presented a defense and counterclaim which was in substance the same as that of her husband in the Colorado suit. The damages claimed were upon the same grounds. The trial court found that the husband, W. L. Box, was acting for his wife, as her agent, throughout the entire Colorado transaction and litigation and that she was bound by

2. Hereinafter referred to as Mary Box or defendant.

3. Rundell v. Box, 89 F.Supp. 166.

628

the judgment. The sole question to be decided is the sufficiency of the evidence to sustain this finding. The law is settled that a judgment rendered between parties or their privies is conclusive thereafter as to all matters litigated therein and as to every issue, claim or defense which could have been appropriately decided.[4] If this finding of the court is sustained by the evidence, Mary Box is bound by the judgment.[5] Public policy dictates that there be an end to litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be forever settled as between the parties.[6]

■ It is certain that Mary Box was no stranger to the Colorado transaction or the Colorado case. She was active in all of the negotiations. She testified that she had authorized the husband to act for her in the arbitration proceedings immediately preceding the trial of the case which would have determined her rights. If her husband had been successful in his counterclaim, the New Mexico land would have been conveyed back to her. She, no doubt, would have been entitled to participate in any damages which might have been recovered by virtue of the failure of the plaintiff to carry out his contract, she being a joint owner of the ranch. The proper inference to be drawn from the testimony is that she authorized her husband to act for her in the Colorado case. There is ample evidence to sustain the finding of the court.

■ The agency to conduct the Colorado litigation did not involve a contract to sell lands and was not within the Colorado

Statute of Frauds. See Colo.Stat.Ann.1935, Vol. 3, C. 71, § 6. The contracts had been executed, deeds had been exchanged, and possession had been delivered. The litigation was for rescission or for damages for fraud in the alternative.

The judgment is affirmed.

4. Martin v. Brodrick, 10 Cir., 177 F.2d 886; Kortz v. Guardian Life Ins. Co., 10 Cir., 144 F.2d 676; Bowles v. Capitol Packing Co., 10 Cir., 143 F.2d 87; Henderson v. United States Radiator Corp., 10 Cir., 78 F.2d 674.

5. 30 Am.Jur. 960, 976; Souffront v. La Compagnie Des Sucreries, 217 U.S. 475, 487, 30 S.Ct. 608, 54 L.Ed. 846; Caterpillar Tractor Co. v. International·Harvester Co., 3 Cir., 120 F.2d 83; Talbot v. Quaker State Oil Refining Co., 3 Cir., 104 F.2d 967; E. I. Dupont de Nemours & Co. v. Sylvania Industrial Corp., 4 Cir., 122 F.2d 400, 404; ·Briggs v. Madison et al., 195 Wash. 612, 82 P.2d 113, 115; Schroeder v. State Bank of Blairsburg, 144 Iowa 42, 121 N.W. 505; Arouani v. Battistic, Tex.Civ.App., 113 S.W.2d 667; Smilay et al. v. Marr et al., 248 Mich. 139, 226 N.W. 823.

6. Baldwin v. Iowa State Traveling Men's Ass'n, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244.