# UNITED SAV. BANK OF DETROIT v. FRAZIER et al.

### No. 12322.

Court of Civil Appeals of Texas. Dallas.

April 9, 1938.

Rehearing Denied May 7, 1938.

F. E. McKee and Drake McKee, both of Dallas, and Monroe Ashworth, of Kaufman, for appellant.

Barnes & McElroy and J. P. Coon, all of Terrell, for appellees.

LOONEY, Justice.

The following is a short résumé of the facts leading to the present suit: On December 11, 1929, W. M. Frazier, seeking to borrow money with which to erect a garage and service station building on his business homestead in the city of Terrell, Tex., through B. S. Roberts, loan and real estate agent of said city, applied to the United Savings Bank of Detroit, Mich., for a loan of $5,500; the first paragraph of the application reads: "The undersigned, for the purpose of negotiating a loan does hereby constitute and appoint B. S. Roberts of Terrell, Texas, as his attorney and agent, and through said agent does hereby make application of (to) The United Savings Bank of Detroit, Michigan, for a loan of Fifty Five Hundred & 00/100 ($12.50 pér mo. plan) Dollars, on real estate offered as security and hereinafter described. The answers hereinafter set forth, to the various questions, are made as true representations of facts, to induce said Bank at Detroit, Michigan, to grant said loan." This language was followed by answers to various and sundry questions of no particular materiality here. After the execution by Mr. Frazier of the written application, it was forwarded by Roberts to F. E. McKee, general attorney for Texas of defendant bank, who, after having the property inspected, forwarded the application, together with an appraisement of the property, to the defendant bank at Detroit, Mich., the application being tentatively approved. In furtherance of the enterprise—of obtaining the loan—W. M. Frazier and wife, Annie Belle Frazier, on January 17, 1930, entered into a mechanic's lien contract with J. W. Wofford (contractor at Terrell), who agreed to furnish the nec-

essary labor and materials and erect the building according to plans and specifications, in consideration of $2,000 to be paid February 17, 1930, and $5,500 to be paid April 12, 1930, evidenced by a promissory note in favor of the contractor, bearing 10 per cent. interest per annum, providing for attorney's fees, etc., and retaining an express mechanic's, materialman's, laborer's, builder's, and contractor's liens on the real estate upon which the building was to be erected (fully described by metes and bounds in the instrument), also on the improvements to be erected thereon; and on same day Frazier and wife executed a note for $5,500, as called for in the mechanic's lien contract, payable to the order of J. W. Wofford 90 days after date, reciting that: " * * * This note is given in payment of the erection of a certain one-story brick house of one room, on certain real estate situated in the City of Terrell, County of Kaufman, State of Texas, described as follows, to-wit: (describing the lot), and to secure the prompt payment of this note with accrued interest thereon, a mechanic's, materialman's, laborer's, builder's and contractor's lien has been fixed and granted on the above described lands and the improvements thereon, and to be erected thereon * * *." The contract was filed for record in the office of the county clerk of Kaufman county and duly recorded in the mechanic's lien records of the county on January 19, 1930.

On February 20, 1930, by an instrument in writing duly signed and acknowledged, J. W. Wofford transferred the mechanic's lien contract, previously mentioned, to the United Savings Bank of Detroit; and on same day (although dated February 1st) Frazier and wife executed a deed in trust, conveying the lot in question to George V. Basham of Dallas, Tex., trustee, to secure the payment of a note for $5,500, payable with interest to the United Savings Bank of Detroit, subrogating the bank to all liens securing any sums paid out of the proceeds of the loan, or under any provision of the instrument (including taxes and insurance premiums), and reciting: " * * * That the debt hereby secured is for money advanced by The United Savings Bank of Detroit, Michigan, in taking up and extending a certain note for the sum of Fifty-Five Hundred Dollars, of date January 17, 1930, executed by grantors herein and payable to J. W. Wofford, which said note is secured by a mechanic's, materialman's, laborer's, builder's and con-

tractor's lien upon the above described real estate and improvements thereon, and the said The United Savings Bank of Detroit, Michigan, is subrogated to all the mechanic's, materialman's, laborer's, builder's and contractor's lien, rights, equities, interest and securities of the said J. W. Wofford, the original payee, owner and holder of said note * * *"; providing that, in case of default by grantors, the trustee, his substitute or successor, at the request of the bank, would be authorized to advertise and sell the property, in whole or in part, for the satisfaction of said indebtedness, interest, etc., secured by the trust deed. This instrument was also filed for record in the office of the county clerk of Kaufman county on March 6, 1930.

Both instruments executed by Frazier and wife—that is, the mechanic's lien contract with Wofford, and the deed in trust conveying the property to Basham—as appears from the certificate of the notary, were duly acknowledged before E. E. Boyd, notary public of Kaufman county, Tex.; the certificate attached to each instrument is in legal form, containing recitals showing full compliance with the statute.

Basham, the trustee, declining to act, as authorized by the instrument, the bank appointed J. W. Harris substitute trustee; and, default having been made by Frazier and wife in the payment of the indebtedness secured, Harris, as such substitute trustee, at the request of the bank, duly advertised and sold the property to the highest bidder; the bank being purchaser on its bid of $4,800, being the best and highest bid for the property, and, accordingly, the same was duly conveyed to the bank by the substitute trustee; and, unless nullified for reasons urged by plaintiffs, said instrument vested fee-simple title to said property in defendant bank.

At this juncture in the affairs, Frazier and wife brought this suit to set aside the mechanic's lien contract, the deed in trust, and the trustee's deed, and to remove same as clouds on their title; alleging in substance that the mechanic's lien contract and the trustee's deed executed by Frazier and wife were void, because the acknowledgments by Mrs. Frazier were not taken by the notary public in the form and manner prescribed by law; that the notary was disqualified, because interested in the contracts; that the lien contract never became effective, because Wofford (the contractor) abandoned same and failed to erect the

building; therefore the mechanic's lien did not mature.

The United Savings Bank of Detroit, defendant, answered by general denial, a special plea, alleging that plaintiffs were estopped to attack the instruments involved; and, in a cross-action (in the nature of trespass to try title), sought recovery of the title and possession of the real estate, and, in the alternative, sought judgment for its debt and foreclosure of the alleged mechanic's and trust-deed lien upon the real estate.

The case was tried without a jury, resulting in judgment in favor of plaintiffs, granting all relief for which they prayed; denied defendants' plea of estoppel, found against it on the cross-action, in which recovery of the title and possession of the property was sought; rendered judgment in its favor against Frazier for the amount of the debt ($7,000), but denied foreclosure, from which defendant bank appealed.

■ We are confronted at the outset with objections by plaintiffs, to certain assignments of error and propositions urged by defendant for reversal, the contention being that same are too general and lacking in requisite definiteness to challenge the attention of the court. These objections are overruled. We hold that the questions discussed are properly presented. Since the amendment adopted in 1931 to the briefing statute, it has been repeatedly held that, whether styled "assignments of error" or "propositions" (and, as we believe, whether named), if an error is called to the attention of the court, the pleading substantially complies with the statute and rules, and is sufficient. See articles 1752 and 1844, R.S., Vernon's Ann.Civ.St. Arts. 1752, 1844; Heatley v. W. P. Ponder & Sons, Tex.Civ. App., 40 S.W.2d 951; Bankers' Lloyds v. Seymour, Tex.Civ.App., 49 S.W.2d 508; Anderson v. Byrum, Tex.Civ.App., 73 S.W. 2d 571, 572.

The trial judge filed findings and conclusions sustaining plaintiffs' contentions throughout, among others the following: "I find from the evidence that E. E. Boyd, the Notary Public who assayed to take the acknowledgments of W. M. Frazier and Annie Belle Frazier to the purported mechanic's lien contract and the deed of trust, was the representative of United Savings Bank of Detroit, defendant herein, in such matters, and that he handled the same for said company and looked after their interests in all matters, and that said company used the said E. E. Boyd as a means of negotiating said loan, preparing part of the papers, and doing other things that were necessary in the making of said loan and closing said transaction, and that he was an interested party therein, and was interested in the instruments executed and the sustaining of the validity thereof." Based upon the above, among other findings, the court concluded, as a matter of law, that neither the mechanic's contract nor the deed in trust constitute a valid lien upon the property in question.

■■ The correctness of these findings and conclusions is challenged on the ground that same are not supported by evidence and are contrary to law. The uncontradicted evidence shows that, during the progress of the transactions involved, and for a number of years prior thereto, B. S. Roberts and E. E. Boyd conducted an insurance office at Terrell, Tex., under the firm name of "B. S. Roberts & Company"; that during the same period Roberts individually conducted a loan and real estate agency, in which Boyd had no interest, but was employed by Roberts and paid a salary for services rendered in regard to said loan and real estate business. The evidence is also undisputed that Boyd had no interest in either the mechanic's lien contract, the deed of trust, or in any of the documents pertaining thereto. His activities with reference to these matters, as detailed in the findings of the trial court, were had in his capacity as employee of Roberts. So, we conclude that the findings of the court, in the respects mentioned, are not supported by evidence, but are against the uncontradicted evidence. But, if it had been shown that Boyd represented defendant bank, that fact of itself would not have disqualified him to take the acknowledgments. In 1 Tex.Jur. 446, the doctrine is announced (supported by authorities) that: "The fact that the officer is in the employ of one of the parties to an instrument does not of itself disqualify him from taking the acknowledgment; in order to disqualify, the employment must be such as to create in the employee a direct pecuniary interest in the consideration for the execution of the instrument, or make him interested in upholding it after its execution; and he is not disqualified where his financial interest is the same regardless of whether or not the validity of the instrument is upheld." Also see Kutch v. Holley, 77 Tex. 220, 14 S.W. 32; Gordon-Sewall & Co. v. Walker,

Tex.Civ.App., 258 S.W. 233; Tilley v. Kangerga, Tex.Civ.App., 83 S.W.2d 787.

█ The court also found that the notary public did not explain the instruments to Mrs. Frazier, nor examine her privily and apart from her husband, and that she did not know that she was signing an instrument creating a lien on their business homestead. Although denied emphatically by both Boyd and Roberts, the finding of the court in the respect just mentioned is supported by the testimony of Mrs. Frazier. But notwithstanding that fact, as the certificates of acknowledgment contain factual recitals in literal compliance with the statutes, we are of opinion that they were immune from collateral attack—in that neither fraud nor imposition was shown to exist. Mrs. Frazier testified that, at the instance of her husband, she voluntarily went with him to the office of the notary for the purpose of signing and acknowledging the instruments in question; that she knew they concerned the building in question, but did not know they concerned the placing of a loan thereon; that her husband was handling the business and that she reposed confidence in him. Returning home after signing the trust deed in question, she asked her husband what she had signed, and he told her it was for the purpose of obtaining a loan on the property. She testified that, had she known that fact, she would have refused to sign, and that she so told her husband and others. Although this incident occurred February 20, 1930, more than a month prior to the closing of the loan, she made no effort to expunge her signature from the instrument or recant her acknowledgment, nor did she make any objection to the notary public or to any one connected with defendant bank.

█ Absent any evidence impeaching the certificate for fraud or imposition, we think the rule definitely settled in this State is that, the notary's certificate is conclusive and immune from collateral attack. In Ward v. Weaver, Tex.Com.App., 34 S.W. 2d 1093, the court said (page 1095): "It is settled that, where a married woman appears before a notary for the purpose of acknowledging an instrument, the fact recitals of the notary's certificate of acknowledgement are conclusive, unless fraud or imposition is shown. Hartley v. Frosh, 6 Tex. 208, 55 Am.Dec. 772; Davis v. Kennedy, 58 Tex. 516. But it is also settled that, if the married woman does not appear before the notary for the purpose of ac-

knowledging the instrument, the notarial certificate does not preclude her from showing this nullifying fact." This doctrine was also announced in Brand v. Colorado Salt Co., 30 Tex.Civ.App. 458, 70 S.W. 578, writ refused; Freiberg v. De Lamar et al., 7 Tex.Civ.App. 263, 27 S.W. 151, writ refused; Wiley Co. v. Prince, 21 Tex. 637; Cockerell v. Griffith, Tex.Civ.App., 255 S.W. 490; Texas Co. v. Keeter, Tex.Civ.App., 219 S.W. 521.

With reference to the contention that, Wofford abandoned the mechanic's lien contract, that Frazier borrowed money from banks and erected the building, hence that the mechanic's lien did not mature, the court found in substance that Wofford did nothing towards carrying out the contract, was unable to do so, and that shortly after the deed of trust was executed informed Frazier to that effect; that immediately after learning of this situation Frazier told Boyd of Wofford's inability to proceed further, and inquired if defendant bank would furnish Wofford with money to erect the building, and was informed by Boyd that the bank would not advance any money until after the completion of the building; thereupon Frazier borrowed money from banks ($4,500) and had the building erected.

█ These findings are based upon the testimony of Frazier, although both Roberts and Boyd denied any knowledge that Wofford abandoned the contract, or that the erection of the building was taken over by Frazier; both testifying that Wofford was on the job to the finish, apparently in charge of the work. Be that as it may, we are of opinion that defendant bank was never visited with notice that Wofford had abandoned the contract (if he did), or that the building was erected by Frazier. Plaintiffs seek to visit defendant bank with notice of this situation, by reason of the conversation Frazier said he had with Boyd, on the theory that, being defendant's agent, notice to Boyd was notice to the defendant. For reasons heretofore stated, we hold that Boyd was not defendant's agent, hence notice to him of the abandonment of the contract by Wofford was not notice to the defendant. It follows, therefore, that all conclusions by the trial court based upon such theory were unauthorized by either the law or facts.

The trial court having found against the plea of estoppel, defendant bank assigned error; contending that the uncontradicted evidence shows that plaintiffs were estopped to deny the validity and existence of the

938

mechanic's and trust deed liens upon the property—in that, the conduct of Frazier, acting for himself and wife, with her full acquiescence, she signing, without reading, papers connected with the enterprise at the request of her husband, relying entirely upon him; their said conduct being consistent with the existence and validity of the lien, and inconsistent with its invalidity, thus inducing defendant bank to part with its money under the belief that it was being used to take up a note secured by a valid mechanic's lien.

As heretofore shown, the only notice sought to be visited upon defendant bank that Wofford abandoned the contract was by reasons of the notice given Boyd (defendant's alleged agent) by Frazier, and, as we hold that Boyd was not such agent, notice to him would not be visited upon defendant bank, hence we conclude that, prior to the closing of the loan, defendant bank was without notice or knowledge of any fact vitiating or affecting adversely the mechanic's lien.

■ Mrs. Frazier testified that, at the instance of her husband, she went to the office of the notary public for the purpose of signing and acknowledging the instruments; and that, while she was not aware that a lien was being placed upon the business homestead, she relied upon her husband and did as he requested. The building was completed the latter part of March, report of such fact was made to Mr. McKee at Dallas, defendant's general attorney for Texas, with authority to close loans; McKee issued a check for $5,500, payable to Frazier and his wife, forwarded same to Roberts, with instructions to see that the money was paid and the loan closed properly. McKee had no notice that the situation was other than as reflected by the written instruments and the abstract, or that Wofford had not fully executed the mechanic's lien contract. The evidence is also undisputed that Roberts, to whom the check was forwarded, was without knowledge that the situation was other than as reflected by the instruments, or that Wofford had abandoned the contract, and that the building was erected by Frazier. When the check sent by McKee was received by Roberts, the American National Bank at Terrell was in possession of the mechanic's lien note for $5,500, executed by Frazier and wife to Wofford, evidently placed with the bank by Wofford, as collateral to better secure Frazier's notes held by the

bank for money expended in constructing the building. This conclusion is supported by the uncontradicted testimony of Boyd. Thus, it became necessary for Roberts to place the money in the bank, in order to obtain possession of the mechanic's lien note. The check for $5,500, payable to Frazier and wife, was endorsed to Wofford by Frazier, Mrs. Frazier's name also appearing as endorser; Wofford in turn endorsed the check to Roberts (also endorsed the mechanic's lien note to defendant Bank); and Roberts, endorsing the check, had the money placed to his credit in the American National Bank, obtained possession of the mechanic's lien note, and, because of a judgment against Frazier of $400, the amount was withheld at Frazier's request, as he was not ready at that time to settle the judgment; but about a year later, the judgment having been settled by Frazier, the $400 was paid to him. There is some conflict in the evidence as to whether or not Mrs. Frazier endorsed the check, but we do not deem that a matter of any materiality, as the transaction was a community affair, and Mr. Frazier had the right to collect the check and direct disbursement of the proceeds. It is doubtless true that the money paid the bank by Roberts was used to satisfy Frazier's indebtedness to the bank; and in that sense only can it be said that the money loaned by defendant bank to Frazier was used to pay notes against him held by the local bank. The final settlement, as above outlined, seems to have been by common consent, and, so far as disclosed by the record, was perfectly satisfactory to all parties concerned.

■ So, without reference to whether or not the contract was abandoned by Wofford and the building completed by Frazier with money borrowed from the bank, we conclude that plaintiffs estopped themselves to deny the validity and existence of the mechanic's lien. The last act of Frazier—endorsing the check to Wofford, his participation in the closing acts, the use made of the money, its acceptance, retention and the enjoyment of its benefits—amounted to a reaffirmation of integrity and good faith as to all that had preceded, same being perfectly consistent with the idea that the mechanic's lien contract was valid and subsisting, and inconsistent with any other theory.

■ "Ordinarily," as said in Farm & Home, etc., Ass'n v. Muhl, Tex.Civ.App., 37 S.W.2d 316, 319, "the erection of the

improvements as per the terms of the contract is a necessary prerequisite to the creation of a valid mechanic's lien on the homestead, but where the husband and wife have by their conduct led an innocent third party to believe that a valid lien has been created on the homestead and such a third party is caused to invest his funds on the faith and credit of such lien, the husband and wife are estopped as to such third party to plead that the lien is invalid." Also see Roane v. Murphy, Tex.Civ.App., 96 S.W. 782; Sanger v. Calloway, Tex.Com.App., 61 S.W.2d 988.

It is urged, as a matter of significance, that the money Roberts paid the American National Bank in taking up the mechanic's lien note was used to pay Frazier's notes held by the bank; also that $400 of the money was used in settlement of a judgment against Frazier. We fail to appreciate the force of the contention; the loan was made to Frazier, it was expected that he would get the benefit of the money; the loan was based upon the mechanic's lien note held by Wofford, and Wofford was supposed to transfer the note to the loan company; the check, in settlement of the loan, was made payable to the Fraziers; Frazier endorsed the check to Wofford, and Wofford transferred same to Roberts; Roberts deposited the money in the bank to his credit, and it was used, primarily, to take up the mechanic's lien note; and simultaneously was used to satisfy the notes held by the bank against Frazier. In this way, Frazier obtained the benefit of the money, and, unquestionably, it went into the erection of the building.

■ If it can be correctly said (which we do not believe) that the indebtedness for which the land was sold by the trustee, to the extent of $400, the amount of the judgment against Frazier, was not secured by the lien, that fact would not vitiate the sale—in that the power of sale was properly exercised, because the larger portion of the indebtedness, unquestionably, was secured by the lien. See Belcher Land Mtg. Co. v. Taylor, Tex.Com.App., 212 S.W. 647, 649, authorities cited; Price v. McAnelly, Tex.Civ.App., 287 S.W. 77, 81; Chambers & Co. v. Little, Tex.Civ.App., 21 S.W.2d 17, 21.

■ We have reached the conclusion that it is our duty to reverse the judgment of the trial court and here render judgment for appellant, awarding recovery of the title and possession of the land in question. In doing so, we are not unmindful of the rule announced by the Supreme Court, to the effect that Courts of Civil Appeals are without authority to set aside fact findings by jury or trial judge on conflicting evidence, substitute other findings, and render judgment thereon (Choate v. San Antonio &. A. P. Ry. Co., 91 Tex. 406, 44 S.W. 69; Burgess v. Western Union Tel. Co., 92 Tex. 125, 128, 46 S.W. 794, 71 Am.St.Rep. 833; Thomas v. Morrison, 92 Tex. 329, 333, 48 S.W. 500), and, in taking the action indicated, do not think that rule is transgressed. To summarize: Our conclusions are that the findings of the trial court that Boyd, the notary who took the acknowledgments of Mr. and Mrs. Frazier to the instruments in question, was interested in the transaction, therefore disqualified, was without evidence; that the certificates of acknowledgment admittedly regular, showing full compliance with the statute by the notary, being immune from attack except for fraud, which not being shown, the finding of the trial judge to the effect that the notary failed to comply with the statute in taking the acknowledgments was immaterial; and that, for reasons shown in the discussion, the court erred in not sustaining defendant's plea of estoppel, in that, same was established by undisputed evidence.

However, if it can be correctly said that, in the situation revealed by the record, we are not authorized to render judgment for appellant, our judgment would be that the cause be remanded to the trial court for further proceedings. So, in harmony with the views expressed, we reverse the judgment of the trial court and here render judgment for appellant for the recovery of the title and possession of the land in question (that being the judgment we think the court below should have rendered), and only on the contingency mentioned would our decision be that the case be remanded.

Reversed and rendered.

## On Rehearing.

In the tenth paragraph of appellees' motion for rehearing, the following language from the opinion is quoted, to wit: "On February 20, 1930, by an instrument in writing duly signed and acknowledged, J. W. Wofford transferred the mechanic's lien contract, previously mentioned, to the United Savings Bank of Detroit; and on the same day (although dated February 1st) Frazier and wife executed a deed in trust * * *." Appellees criticize this lan-

guage, stating that there is no evidence that the deed of trust was executed by Frazier and wife on February 20th, or on any date other than that specifically stated in said instrument—that is, on February 1st.

Our finding that the instrument was executed on February 20th was for the reason that it was not acknowledged until that date, as is apparent from the certificate of the notary. It cannot be correctly said that an instrument, required to be acknowledged by a married woman, is executed until acknowledged by her; the acknowledgment and not the signature gives validity to such an instrument. 1 Tex.Jur. 518, 519, § 115.

In the eleventh paragraph, appellees insist that the preponderance of the evidence is to the effect that Wofford abandoned the contract, and that the trial court so found; therefore we are requested to make a finding to the same effect. With reference to this matter, we think the opinion sufficiently full. We made no finding contradicting that made by the trial judge, but held that, under the facts and circumstances, even if Wofford did abandon the contract, appellees were estopped to deny the validity of the mechanic's lien.

Referring to the contention set forth in the twelfth paragraph, we did not find that Mrs. Frazier endorsed the check in question. While the preponderance of the evidence is to the effect that she did, yet she testified that she did not; but, for reasons fully stated in the original opinion, we think it wholly immaterial whether she did or did not sign the check. The check bore the endorsement of her husband and, as manager of the community, he had the right to collect and disburse the same.

In the original opinion (116 S.W.2d 938) we stated: "When the check sent by McKee was received by Roberts, the American National Bank at Terrell was in possession of the mechanic's lien note for $5,500 executed by Frazier and wife to Wofford, evidently placed with the bank by Wofford, as collateral to better secure Frazier's notes held by the bank * * *." This finding is criticized in the thirteenth paragraph of appellees' motion for rehearing, the contention being that there is no evidence that the note was placed in the bank by Wofford, and that the trial court found that it was not; hence we are requested to correct this finding and state that the note was not placed by Wofford with the Terrell bank, as collateral to secure Frazier's note.

The record fails to disclose that the trial court made any such finding, and we are of opinion that the circumstances fully support our conclusion as announced in the original opinion. Mr. Boyd testified that Wofford said he was going to borrow money on the mechanic's lien contract, that when the check for $5500 was sent to close the loan the mechanic's lien note was held by the bank; that it was necessary to pay the bank to get possession of the lien note; and that witness understood Wofford had put the note up with the bank as collateral. The note was payable to Wofford, he alone had the right to handle it, it later was found in the bank, unexplained, except that it was held at the time the bank held Frazier's notes. Wofford did not testify and the testimony of Boyd is not contradicted.

So we think the circumstances show that the note found its way to the bank through the instrumentality of Wofford, to whom, ostensibly, it belonged and was held in connection with the Frazier notes. Among other concluding acts, Wofford asserted control by endorsing the lien note on its being delivered by the bank to appellant.

We have duly considered all grounds alleged by appellees for rehearing, and, finding same without merit, the motion is overruled.

Overruled.