MRS. MARY WILD KUEHNE ET VIR V. O. D. DENSON ET AL.

No. A-2019. Decided March 30, 1949.
Rehearing overruled May 18, 1949.
(219 S. W., 2d Series, 1006.)

*George E. Shelley* and *W. Trenckmann,* both of Austin, for petitioners.

The Court of Civil Appeals erred in holding that Mrs. Kuehne is precluded under the principles of estoppel and ratification from claiming ownership of the strip of land in controversy in this suit. Boyd v. Boyd, 207 S. W. (2d) 969; Shield v. Hall, 207 S. W. (2d) 997; City Bank v. Wellington Sch. Dist., 142 Texas 344, 178 S. W. (2d) 114.

*Louis Scott Wilkerson,* of Austin, for respondent.

Mrs. Kuehne was judicially estopped, as held by the Court of Civil Appeals. Ryan v. Maxey, 43 Texas 192; Allen v. Bermier, 216 S. W. 647; Stephenson v. Marsalis, 33 S. W. 383.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is an action in trespass to try title brought by O. D. Denson et al, respondents, against Mrs. Mary Wild Kuehne and her husband, Dr. John M. Kuehne, petitioners, in which a trial court judgment for petitioners on cross-action was reversed by the Court of Civil Appeals and rendered for respondents. 215 S. W. (2d) 429.

On December 31, 1915, Mr. and Mrs. Charles Wild, parents of Mrs. Kuehne, executed to her a deed of gift of 5 acres out of a 40-acre tract of land which they owned on the outskirts of Austin, describing the 5 acres as follows: "Beginning at the SE corner of said 40 acre tract, on the West side of the Fiskville Public Road, thence westerly with the South boundary line of said 40 acres 809.3 ft. to corner; thence N. 29 degrees 50 minutes E. 268 ft. to corner; tence easterly parallel with South boundary line 809.3 ft. to stake for corner in the edge of Fiskville road; thence southwardly 268 feet to the place of beginning, containing five acres of land more or less." This deed was not delivered until some time in the spring of 1917.

Mrs. Wild died in 1932, leaving a will by which she devised all her property to her husband for life with remainder to their children. Mr. Wild was appointed executor of this will. In 1936 he died, leaving a will devising all his property to these children. The two administrations were then consolidated and Mrs. Lena Wild Winkler, daughter of the Wilds and sister of Mrs. Kuehne, qualified as administratrix with will annexed of both estates.

On April 15, 1946, Mrs. Winkler filed in the probate court an application for authority to sell 5 acres out of the 40-acre tract which the Wilds had owned "being all of said forty (40) acre tract except the portions of same which have been heretofore conveyed." Notice of this application was served by posting. Thereafter, in due time and form, came the court order for "private sale for cash", the administratrix's report of sale, the order of confirmation and the administratrix's bond for sale. Then, on August 6, 1946, Mrs. Winkler, as administratrix, executed and delivered to Denson a general warrany deed conveying "five acres more or less" out of the Wild tract and describing it as follows: "Beginning at a point in the West line of the Fiskville Road (Dallas Highway) 268 feet north of the S. line of said 40-acre tract, and being the N. E. corner of a tract conveyed to Mary Wild Kuehne by Charles Wild and wife, by deed dated Dec. 31, 1915, recorded in Vol. 293, page 617, Deed Records of Travis County, Texas; thence northerly with the west line of said Highway, 98 vrs. more or less to the S. E. corner of a five-acre tract conveyed to Lena Wild Winkler and C. H. Winkler by Charles Wild and wife, by deed recorded in Vol. 295, page 42, Deed Records of Travis County, Texas; thence westerly with the S line of said Winkler tract 286.3 vrs. more or less to the S W corner of said Winkler tract; thence southerly parallel to the W line of said Highway, 98 vrs. more or less to the N E corner of said Kuehne Tract; thence easterly with the N line of said Kuehne Tract 286.3 vrs. more or less, to the place of beginning."

After the death of Mr. Wild, Mrs. Kuehne wrote all the Wild children inquiring whether it was agreeable for Mrs. Winkler to serve as administratrix. Subsequently a family meeting was held and it was agreed that the above described 5-acre tract (which had been the homestead of the Wilds) should be sold and the proceeds divided among the devisees. Mrs. Kuehne knew about the subsequent sale to Denson, made no objection to it and got her share of the proceeds, none of which has been returned or tendered to Denson.

This suit is over a strip 15 feet wide along the entire south side of the 5 acres conveyed to Denson by Mrs. Winkler, administratrix. The disputed strip is admittedly not within the tract described in the 1915 deed from the Wilds to Mrs. Kuehne, but petitioners claim title to it on basis of the following facts found by the trial court:

Prior to the delivery of the 1915 deed by the Wilds to Mrs. Kuehne, the Kuehnes requested the Wilds to mark on the ground the boundaries of the tract intended to be conveyed, whereupon

and before delivery of the deed the Wilds did mark its boundaries as follows: "Commencing at a point about two hundred sixty-eight (268) feet north of the north line of what is known as Houston Street and from the point of intersection of the north line of said street with the west line of the present Fiskville Road (Dallas Highway), and being about two hundred eighty-three (283) feet north of the south line of said forty (40) acre tract, and said fence extending from said point in a westerly direction parallel to the south line of said forty (40) acre tract, eight hundred nine and three-tenths (809.3) feet to a corner, which corner is about two hundred sixty-eight (268) feet north of the north line of Houston Street, and about two hundred eighty-three (283) feet north of the south line of said forty (40) acre tract." This description puts the disputed strip in the Kuehne tract.[1]

Believing that the true north line of their property was thus 15 feet north of where it was placed by their deed from the Wilds, the Kuehnes and Mr. Wild erected a wire fence along the entire north line so marked by the Wilds 283 feet north of their south line instead of 268 feet therefrom as called for in their deed. Then the Kuehnes planted a ligustrum hedge immediately south of this fence as a windbreak. This hedge began at the west line and extended along the fence about one-third across the tract; at the time of trial it was 20 or 25 feet high. The Kuehnes planted other trees on the disputed strip. These improvements were suitable to their use of the strip in connection with the remainder of their tract. They kept the fence in repair and continuously used the strip along with the rest of their tract; and the fence was recognized by all parties at interest as the Kuehnes' true north boundary until some eight months after the conveyance to Denson by Mrs. Winkler, administratrix, above described. This use by the Kuehnes was open, peaceable, continuous and adverse for more than 10 years prior to the filing of the present suit; and it was a homestead use.

During negotiations for the sale to Denson the property intended to be conveyed was understood to be north of the fence

---

[1]Petitioners' testimony showed that the Wilds thus marked the boundaries so as to include the disputed 15 feet in the Kuehne tract to compensate the Kuehnes for the loss of 15 feet along their south side which had theretofore been devoted to road purposes. The Wilds wanted this road kept open, principally for the convenience of some of their other children who had been given 5-acre tracts lying west of the Kuehnes and the Wild home place. Mr. Wild told the Kuehnes that the 15 feet along the south boundary did not belong to them and was never to be fenced.

erected by the Kuehnes along the north line of the tract claimed by them; and before the sale by Mrs. Winkler, administratrix, was completed Denson had actual notice that Mrs. Kuehne was claiming all property south of the fence.

When Mrs. Kuehne accepted her part of the proceeds of the administration sale by Mrs. Winkler she had no actual knowledge that the sale included the fifteen feet of land in controversy.

To defeat the limitation title which the trial court held accrued to Mrs. Kuehne by reason of these facts, Denson relies upon the doctrine of estoppel by judgment arising from the probate proceedings under which Mrs. Winkler executed the deed to him on August 6, 1946. In support of his contention he cites Ryan v. Maxey, 43 Texas, 192; Stephenson v. Marsalis, 11 Texas Civ. App., 162, 33 S. W., 383; Allen v. Berkmier (Civ. App.), 216 S. W., 647 (er. ref.) ; Annotation, 2 A. L. R. (2d) p. 12; and Speer, Law of Marital Rights in Texas (3rd Ed.), sec. 278, p. 349.

■ The Annotation, 2 A. L. R. (2d) pp. 12-215, supra, deals with all phases of judicial estoppel and makes it quite clear that a judicial sale does not of itself necessarily result in estoppel. For example, at the beginning of Anno. IV, on p. 119. it is said, "As a general rule an heir, devisee, legatee, or other beneficiary of a decedent may, by the operation of the doctrines of waiver and estoppel, become precluded from challenging as invalid a judicial sale of the decedent's property by the executor or administrator or similar fiduciary, *through conduct construable only as knowingly approving the sale.*" Then in the summary, Anno. XII, on page 215, is this statement: "Where an estoppel is claimed, *the essentials of estoppel* (see sec. I) *such as prejudice to another by statements or conduct upon which he has a right to rely, must have been present.*" (Italics ours.)

In Ryan v. Maxey, supra, where the doctrine of judicial estoppel was applied to a guardian's sale procured and participated in by two heirs who were married women, this court said that to hold they were not estoppel *would be to allow them to perpetrate a fraud.*

Judge Speer, in his law of Marital Rights. supra, (Sec. 278), reviews and construes Stephenson v. Marsalis, supra, appraising its effect as follows, "But its disposition was controlled by the fact that to have permitted them to recover the homestead * * * *would be to sanction a fraud,* which no court can do." (Italics ours.)

In Allen v. Berkmier, the opinion stresses the fact that the heirs seeking to avoid an administrator's sale had *knowingly* participated in the proceedings and had received the proceeds *"with knowledge."*

■ "The purpose of estoppels is to prevent inconsistency and fraud resulting in injustice." 31 C. J. S., 192. Although the case involves only estoppel *in pais,* Davis, Receiver, v. Allison, 109 Texas, 440, 211 S. W., 980, applies as well to all other estoppels when it declares: "Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny. But one entitled to its protection must have been misled."

In the light of those authorities, we conclude that judicial estoppel is not available to Denson under the facts of this case. The testimony amply supported the trial court's finding that Denson had actual notice before the administration sale that Mrs. Kuehne was claiming all property south of the fence. Mrs. Kuehne testified that some two months before the sale proceedings were begun she told Denson that what he proposed to buy lay north of the fence, which she pointed out to him from the front porch of her home. The agent who negotiated the sale testified that Denson understood before the contract of sale was signed that the fence was the line. And in that contract, dated Feb. 27, 1946, the tract Denson was to buy for a lump sum of $20,500 cash was described as "5 acres, more or less, * * * lying immediatelly north of the 5 acres tract in said Wild property now owned and occupied by J. M. Kuehne, and fronting approximately 275 feet on said Georgetown Road, and abutting said J. M. Kuehne tract along its north line." Moreover, not until a survey was made some eight months after Denson had accepted the deed from Mrs. Winkler, administratrix, did he learn that under its field notes his south line was fixed so as to run 15 feet south of the fence and hedge row rather than to coincide with the fence.

■ Under those circumstances, it cannot fairly be said that Mrs. Kuehne and her husband participated in the administration proceedings with knowledge that Denson was thereby to acquire the 15 feet of land in controversy. The only reasonable deduction is that they so participated in the belief that he was not acquiring it and that neither they nor Denson intended that he should thereby acquire it. In that situation there were no statements or conduct on the part of petitioners upon which he could

or did rely to his prejudice; he was in no way misled as to what he was to get. On the contrary, he agreed to pay $20,500 for 5 acres, more or less, lying immediately north of a tract owned and occupied by the Kuehnes after the dividing line (the fence) had been pointed out to him on the ground by Mrs. Kuehne. So, to hold that the administration proceedings did not estop petitioners thereafter to claim the strip in controversy, would not be to allow the Kuehnes "to perpetrate a fraud" nor would it be for the court "to sanction a fraud." For there certainly can be no fraud in a result which all parties at interest understood and intended should come from those proceedings. And no principle of judicial estoppel requires this court now to decree any other or different result. We hold, therefore, that petitioners are not estopped to assert title to the land in controversy.

By counterpoint Denson urges that there is no evidence to support Mrs. Kuehne's claim of adverse possession, the trial court having concluded that she had acquired title by ten years' limitation to the 15 feet in controversy before the administratrix's deed to Denson was executed. As already stated, the 15 feet in suit was fenced in 1917 so as to be inclosed with the remainder of the Kuehne tract. The fence consisted of poultry wire four feet high with barbed wire above it stapled on cedar posts, and petitioners kept it "chicken tight all this time." The other three sides of the Kuehne tract were fenced in the same manner, and the testimony shows that the Kuehnes made the same use of the 15 feet in dispute as they did of the rest of the tract surrounding their home. Denson suggests that at most the only evidence is that the Kuehne chickens may have "wandered" onto it and that a lingustrum hedge was built on the disputed strip as a windbreak for the Kuehne home. Even so, that would be some evidence of adverse possession under the general fact situation of this case. See Caver v. Liverman, 143 Texas, 359, 185 S. W. (2d) 417.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered March 30, 1949.

Rehearing overruled May 18, 1949.