COCKRELL et ux. v. FARMERS STATE BANK IN MEXIA.

No. 3065.

Court of Civil Appeals of Texas. Waco.

Feb. 5, 1953.

Rehearing Denied March 5, 1953.

Bowlen Bond, Teague, for appellant.
W. W. Mason, Mexia, for appellee.

TIREY, Justice.

The appellee brought this suit to recover the amount advanced on a promissory note and for foreclosure of a mechanic's lien, the note and lien having been executed by Welton R. Cockrell and his wife, appellants here. At the conclusion of the evidence the bank tendered its motion for an instructed verdict, which the court overruled.

The jury in its verdict found substantially that prior to the execution of the mechanic's lien contract by Cockrell and his wife, Willbanks, the contractor, represented to Mrs. Cockrell that the contract provided for the payment of $4740 in full for the improvements, and that this representation was false and was made for the purpose of inducing Mrs. Cockrell to execute the mechanic's lien contract, and that she relied on the truth of the representations made to her in the signing of the contract, and that it was material; that at the time Mrs. Cockrell signed the mechanic's lien contract and note for $5500, that the Notary did not explain such contract to her; that her husband was present, and that she did not acknowledge to the Notary that such instrument was her act and deed, nor that she had willingly signed the same for the purposes and consideration therein expressed, nor that she did not wish to retract it; that on the 22nd of July, 1951 Cockrell tendered to the bank the sum of, $2922 in full payment of the amount he claimed was due for the improvements; that the amount due and unpaid on the note for $5500 on July 22, 1951 was the sum of $2847.94.

After the verdict was rendered the court denied appellants' motion for judgment and granted the bank's motion for judgment non obstante veredicto, and decreed that the bank recover from the defendant Welton R. Cockrell the sum of $4192, being principal, interest and attorney's fees, with interest from date of judgment at the rate of six per cent per annum, and for costs of suit, and the decree further provided that the bank have foreclosure of its mechanic's and materialman's lien against defendants Welton R. Cockrell and wife, Ruby Edna Cockrell, and Craig Willbanks, save and except the sum of $381.10 attorney's fees, leaving the amount subject to collection through lien foreclosure as $3811, with interest accruing thereon and costs of court, and foreclosed the lien on the property. Cockrell and his wife duly excepted to the decree entered by the court and gave notice of appeal to this court, and the case is here for review.

Appellants do not question the personal judgment rendered against defendant Cockrell and they challenge only that portion of the decree holding the mechanic's and materialman's lien valid as to the bank and foreclosing it on appellants' homestead. In keeping with their position they assail the judgment substantially as follows: (1) The trial court erred in decreeing foreclosure of mechanic's and materialman's

lien on appellants' homestead in favor of the bank, because (a) the lien contract was rescinded by the original parties before it was assigned to the bank, (b) a lien was procured from Mrs. Cockrell, a married woman, on her homestead by fraud and without her separate acknowledgment, (c) the lien remained invalid when assigned to appellee bank in spite of the fact that the bank was a bona fide purchaser of the note without notice of the invalidity of the mechanic's lien contract, and (d) appellants are not estopped to deny the validity of the mechanic's lien by any affirmative act or representation misleading appellee bank and inducing the bank to purchase the invalid lien.

Testimony was tendered to the effect that appellants, on March 12, 1951, negotiated with Craig Willbanks, a contractor, to build a four-room house for a home on the lot in suit; that they orally agreed on a price of $4740; that Cockrell and the contractor talked with Monroe Hitt, agent of the Pioneer Savings & Loan Association, and since Cockrell did not have the money for the down payment on the house, Hitt suggested to Cockrell that in the application for the loan the cost of the house be padded to $5500; that the purpose of this padding was to increase the loan from the Pioneer Savings & Loan Association to $3850, leaving only $890 to be paid during construction; that Cockrell was reluctant to pad the cost of the house in this manner but agreed to do so on the assurances of Willbanks and Hitt that padding was customary in such cases; that Mrs. Cockrell had no knowledge (at this particular time) of this scheme to pad the price of the house to increase the amount of the loan and she understood the price of the house was to be $4740; that on March 14, 1951, Hitt called the Cockrells to his office and they were advised that the loan had been tentatively approved by Pioneer Savings & Loan Association, and the Cockrells executed the necesary note and mechanic's and materialman's lien contract to be sent to the Pioneer Savings & Loan Association. The amount of the note executed by Cockrell and wife was $5500, and the mechanic's lien contract was prepared and executed by the Cockrells and by Willbanks, the contractor. Mrs. Cockrell signed the note and mechanic's lien contract without reading them and she had no actual knowledge of the padded amounts at the time she signed the papers, and she relied on the representation and understanding with Willbanks that the price was $4740. The mechanic's lien contract was signed by Mrs. Cockrell in Hitt's office, and the Notary did not ask Mrs. Cockrell whether she executed the contract as her act and deed, or whether she willingly signed the lien contract for the purposes and consideration therein expressed, or whether she wished to retract the same, nor did the Notary examine her separately and apart from her husband. While Cockrell was driving his wife home, after signing the papers in Hitt's office, he told her that he noticed the note had been padded to $5500. This was the first Mrs. Cockrell knew of the padded figure on the note and lien; that after Cockrell took his wife home he returned and demanded the note of Hitt, who was in the act of delivering the note to Willbanks, but the note was delivered to Cockrell and he took it home. A week later Willbanks called Cockrell advising him he had drawn up another lien contract in the agreed amount of $4740 and asked him to come over and sign it. Willbanks told Cockrell to bring the $5500 note with him. This took place on March 21, 1951, at which time Cockrell and his wife signed a new contract, but neither of them acknowledged it. Craig Willbanks and his brother, Lawrence, also signed the new contract as builders. The new contract, among other things, specifically provided: "This contract supersedes all other contracts." After the Cockrells and Willbanks had signed the new contract, Craig Willbanks asked for the return of the $5500 note and Cockrell returned the note to him. Willbanks told Cockrell at the time of this transaction not to record the new contract because it was not necessary to do so. The first contract was not returned to Cockrell and remained in the possession of Craig Willbanks; that Craig Willbanks without the knowledge of the Cockrells, filed the first contract with the County Clerk of Limestone County, Texas, for record on March

15, 1951, and it was recorded in the Lien Records on March 20, 1951. The contractor started construction of the house a day or two after the second contract of March 21, 1951 was executed. On April 11, 1951, Cockrell paid Willbanks, by check drawn on the appellee bank, the sum of $890, and it is appellants' contention that this payment was in accord with the second lien contract, and at the same time Willbanks issued and gave Cockrell a receipt for the $890 payment and for the amount of $760, which was the difference between the $5500 note and the contract for $4740. (The bank had no notice of the foregoing transaction.) This receipt stated in effect that it was a down payment, and the receipt further stated that the amount due from Pioneer Savings & Loan Association was $3850. On April 12, 1951 the bank advanced to Willbanks the sum of $1200 and Willbanks endorsed the $5500 note over to the bank and assigned to the bank the mechanic's and materialman's lien on the property securing such note. Willbanks had, two weeks prior to this date, deposited the note and the first lien contract with the bank.

Appellants in their brief make the following admissions: (a) that the bank had no notice that the first lien contract assigned to them by Willbanks had prior to the assignment been rescinded by the Willbanks and the Cockrells in what has been designated as the "second contract"; (b) no notice of the padding of the $5500 note; (c) no notice that the first contract had been procured from Mrs. Cockrell by fraud, and that she had not properly acknowledged the first contract; (d) no knowledge of the execution of the second contract. Cockrell was a depositor of the bank but no one from the bank advised him or his wife of the transaction Willbanks had with the bank, nor did the bank at that time inspect the house under construction. On April 18, 1951 the bank advanced a second $1200 to Willbanks, and on May 28, 1951 it advanced a third $1200, totalling $3600 it advanced to Willbanks. Cockrell had no knowledge of these advancements. About July 1, 1951 Willbanks abandoned the construction of the house before completion.

Shortly thereafter the bank notified Cockrell for the first time that it held the $5500 note and lien to secure its advancements to Willbanks. Thereafter, on July 22, 1951, Cockrell tendered in cash the amount of $2992, which the bank refused. After the contract was abandoned Cockrell spent $1002.06 for completion.

Much has been written on questions involving the foreclosure of mechanic's liens, but we believe the general rule applicable and controlling here was announced in the early case of Wheelock v. Cavitt, 91 Tex. 679, 45 S.W. 796, 797, 66 Am.St.Rep. 920. The statement there made is: "*In this state the rule is firmly established that where a married women, who has, with her husband, signed a deed conveying her separate real estate, appears before an officer authorized by law, for the purpose of acknowledging the conveyance, and the officer fails to do his duty in taking such acknowledgment, but makes a certificate which shows a full compliance with the law, such certificate is conclusive upon the married woman in favor of an innocent vendee who paid value for it without notice that the officer failed to perform his duty as required by law.*" (Italics ours.)

The Amarillo Court of Civil Appeals in the case of Jones v. Equitable Building & Loan Association, 45 S.W.2d 438 (1931 writ ref.) applied the foregoing rule to the foreclosure of a mechanic's lien contract to a factual situation very similar to the one here. We do not find that the Supreme Court has departed from the foregoing rule. We believe a careful reading of the Jones case answers adversely appellants' contentions and that comment thereon would be of on avail. See also Hickman v. Stone, 69 Tex. 255, 5 S.W. 833; Adkins Polk Co. v. Rhodes, Tex.Com.App., 24 S.W.2d 351; Sanger v. Calloway, Tex.Com.App., 61 S. W.2d 988; Sun Oil Co. v. Rhodes, Tex.Civ. App., 71 S.W.2d 413 (writ ref.); Loden v. Carothers, Tex.Civ.App., 85 S.W.2d 291; United Savings Bank of Detroit v. Frazier, Tex.Civ.App., 116 S.W.2d 933, er. dis.; Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488, point page 494.

We have carefully considered the opinion of this court in Cosgrove v. Nelson, Tex.

Civ.App., 269 S.W. 891, and the opinion of our Supreme Court in the same case in 277 S.W. 1118, and the opinion of this Court in Hill v. Engel, 89 S.W.2d 219 (writ ref.1935), and we see no conflict in the foregoing decisions with the rule here stated and applied by the Amarillo Court in the Jones case, supra.

It is our view that under the authority of the Jones case, supra, and the undisputed evidence, it was the duty of the trial court to grant appellee's motion for an instructed verdict, and, having failed to do so, it was his duty to grant appellee's motion for judgment non obstante veredicto, and his action in so doing is in all things affirmed.

### On Motion For Rehearing.

Appellants, in their motion for rehearing, contend in effect that our opinion heretofore handed down is in conflict with this court's opinion in Hill v. Engel, 89 S.W.2d 219, 221 (opinion 1936, writ ref.). We do not so understand that opinion.

In that case Justice Alexander said: "In order for appellant to invoke the intervention of equitable principles in his behalf, the burden was on him to at least allege and prove that, without any fault on his part, an injustice would result to him if he should be denied the right to enforce the pretended lien. This necessarily included the obligation on his part to prove that he purchased the lien in reliance on its validity and without any notice of its invalidity."

We think it pertinent to state here that Justice Alexander was dealing with a factual situation where the mechanic's lien contract was absolutely void. We think it is also pertinent to point out here, as we did in our original opinion, that the Cockrells permitted the $5500 note to remain in the hands of Willbanks after Mrs. Cockrell knew that such note was padded to the extent of $760. It is true that the $5500 note was delivered by Willbanks to the Cockrells but on Willbanks' request the Cockrells returned the note to Willbanks and did not later demand the surrender of the note and did not make any investigation to ascertain whether or not the mechanic's lien contract

had been filed with the County Clerk and made no effort to protect those dealing with Willbanks without any notice of the invalidity of the mechanic's lien contract and the note. We think it is also important to state here that the Cockrells knew that the purpose of the padding of the note was to aid them in getting a larger loan on the property. Moreover, the record shows without dispute that on April 11, 1951, the Cockrells paid Willbanks by check the sum of $890 on the construction of the house and at the same time Willbanks gave to the Cockrells a receipt for the payment of $890 on the contract and a receipt for the further amount of $760, which was the difference between the $5500 note and the contract price of $4740, which was the amount of the debt and lien the Cockrells intended to create. It is obvious that when Willbanks gave his receipt for the $890 payment, which receipt further acknowledged payment of the amount of $760, that the padding of the note was satisfied and for all practical and equitable purposes the fraud perpetrated on Mrs. Cockrell was satisfied. We think it is also important to state here that all the money advanced by the bank on the note and mechanic's lien was advanced after April 11, 1951, and at the time the bank made its advancements on the note the fraud perpetrated against Mrs. Cockrell no longer existed.

Since the bank had no knowledge or notice of the foregoing transactions, it is our view that the factual situation in this case is clearly within the rule applied by this court in Hill v. Engel, supra, because we think that under this record the doctrine of equitable estoppel was tendered against the Cockrells. "'The purpose of estoppels is to prevent inconsistency and fraud resulting in injustice'. * * * 'Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny.'" See Kuehne v. Denson, 148 Tex. 54, 219 S.W.2d 1006, 1009, point 3. See also Dobbins v. Martin-Buick Co., 216 Ark. 861, 227 S.W.2d 620, and cases cited in Texas

Digest, Vol. 15A, Estoppel. In this connection we think we should say that we have re-examined the bank's pleading and we think it is sufficient to tender the issue of equitable estoppel. See Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, points 1 and 2, 141 A.L.R. 50 (Com.App. op. adopted); Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164; Rick v. Gribbs, 147 Tex. 267, 214 S.W.2d 925; Vol.' 30, Tex.Dig., Pleading, ⮬34(6). We likewise think the proof is undisputed on the issue so tendered, and for that reason appellants' motion for rehearing is overruled. See Points 1 and 2, Hill v. Engel, supra.