

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

August 30, 1957

Hon. Earl Rudder
Commissioner
General Land Office
State of Texas
Austin 14, Texas

Opinion No. WW-248

Re: Whether the description of land contained in an advertisement for bids for mineral lease controls over an ambiguous description contained in a lease executed subsequent to an award to the successful bidder.

Dear Sir:

Your request for official opinion, dated July 24, 1957, is based upon the factual situation briefly outlined below:

On December 3, 1946, the School Land Board advertised for oil and gas lease a portion of the Canadian River as "Tract 1, Canadian River bed, containing approximately 1742 acres (see sketch attached)". The sketch referred to clearly discloses the east boundary of the lease as being a line extending from a point where the east line of Section 16, Block 47, H&TC Railway Company Survey, intersects the north bank of the river, to a point where the east line of Section 58, Block 46 of said survey intersects the south bank of the river. The west boundary of the area to be leased clearly was shown by said plat to be from a point where the west line of Section 19 said Block 47 intersects the north bank of the river to a point where the west line of Section 62, Block 46 intersects the south bank of the river.

The J.M. Huber Corporation, as high bidder, was awarded a lease. On December 11, 1946, lease No. M-30403 was issued to that company. A description of the property as contained in the lease was the same as that set forth in the advertisement for lease with an additional reference to "field notes on file in the General Land Office M.F. 1864". The field notes in the file referred to encompass less area than that depicted on the plat which formed the basis of the bid. Stated briefly, the field notes call for an easterly and westerly boundary of the strip to be leased as running north and south whereas the sketch or plat show these boundaries as

running a few degrees off of north. The net result is that
two pie-shaped tracts (one on either end of the area desc-
ribed by the field notes) were included in the sketch but
excluded by the field notes. Since the field notes as well
as the sketch were incorporated in the lease there results
an ambiguity in the description of the property leased.

You further pointed out that in Cause No. 59581,
State v. Whittenburg, in the District Court of Travis County,
Texas, 53rd Judicial District, affirmed in 157 S.W. 2d 691,
the State recovered land which in general is described in
accordance with the field notes hereinabove referred to. In
that judgment it was held that former lease No. 18164 em-
braced the same land and was in full force and effect. In
Cause No. 74737, State v. Midstates Oil Corporation, in the
District Court of Travis County, Texas, 98th Judicial Dis-
trict, lease No. 18164 was set aside and the land was de-
scribed in that judgment in the same manner as the judgment
in the Whittenburg case and as described in the field notes.
In 1954, J.M. Huber Corporation, the successful bidder as
hereinabove outlined, assigned a portion of its lease and in
such assignment referred to the tract involved as being de-
scribed in the field notes in the Whittenburg case.

Finally you have advised that prior to the execution
of the lease in question the Commissioner had leased up to
the westerly boundary of the area as shown on the sketch
under consideration, and that subsequent to such lease he
has advertised for lease the triangle on the east of the area
described by the field notes.

In addition you have verbally informed us that neither
the General Land Office nor J.M. Huber Corporation was aware
of the discrepancy in the description between the field notes
and the sketch until a relatively recent date.

In view of the foregoing facts you pose the following
questions:

"(1)  Are the Easterly and Westerly limits
of Lease M-30403 as described in the plat at-
tached to the lease and attached to the notice
for bids or as described in the field notes
referred to in File No. M-18164, the Whittenburg
case and the Midstates Oil Corporation case?

"(2)  Can J.M. Huber Corporation now claim
that Lease No. M-30403 covers the acreage shown
on the plat in view of its knowledge of the

Whittenburg case and the description con-
tained in the judgment therein, as reflected
by the assignment executed by the said J.M.
Huber Corporation in 1954?

"(3) If the lease covers the area as
shown on the plat, will it be necessary that
an amendment to the lease be executed by the
Commissioner?

"(4) If the answer to question No. 3
is in the affirmative, should such an amend-
ment be approved by the School Land Board?

"(5) If the lease covers the area shown
on the plat, will it be necessary for the
lessee to pay the State additional bonus and
rental on the basis of the increased acreage?"

That a sketch or plat is a legal means of describing
real estate is fundamental. 14-B Tex. Jur. pages 658-662
and cases there cited. Likewise, there is no question here
of the accuracy of the sketch employed by the State or the
fact that it depicts with complete certainty the boundaries
of the area concerning which bids were invited.

Further, since there is not the slightest indication
of knowledge on the part of the State or of Huber regarding
the disparity between the field notes and the sketch, there
is no basis for a contention of a novation or "new contract"
upon the execution or delivery of the lease proper. For the
same reason, we believe that no particular significance can
in this case be attributed to the fact that Huber, in a sub-
sequent transfer of the lease, referred to the field note
description contained in the Whittenburg case as a means of
describing the property which Huber then thought was accu-
rately reflected by such field notes. It is manifest that
Huber's reference to such field notes was the result of a
mistake of fact, just as both Huber and the State executed
the lease under an identical misapprehension of fact.

The principal question presented is thus narrowed
to whether a valid contract was consummated between Huber
and the State prior to the execution and delivery of the
lease under consideration. If there was such contract it fol-
lows that the lease ultimately documenting the agreement must
necessarily conform thereto.

It is settled law in this State that upon the acceptance of a bid a binding contract is formed between the parties which may not be altered by subsequent unilateral action. Lane and Nearn v. Warren, 115 S.W. 903 (Civ. App. 1909, error ref.). Although this decision relates to a contract between individuals the doctrine thereof applies with equal force to an agreement between the State and an individual. Jumbo Cattle Company v. Bacon, 79 Tex. 5, 14 S.W. 840 (1890); State v. Robison, 119 Tex. 202, 30 S.W. 2d 292, (1930).

The foregoing authorities are decisive of the main question here under consideration. Whether a contract came into existence between Huber and the State upon compliance by Huber with the sales act, in accordance with the holdings in the Jumbo Cattle Company case and the Robison case, supra, or whether such contract did not come into being until the acceptance by the School Land Board of the Huber bid, it is unnecessary to decide. See discussions of this question in Schneider v. Lipscomb County Nat. Farm Association, 146 Tex. 66, 202 S.W. 2d 832, 836 (1947). In either view a binding contract was reached between the State and Huber not later than upon acceptance of Huber's bid by the State School Land Board. This, of course, was prior to the execution of the lease in question. Therefore, the lease must necessarily conform with the prior contract between the parties and when so conformed embraces the property depicted in the sketch or plat by which the bid was invited and made.

With respect to the various specific questions propounded it is our opinion and you are so advised:

(1) That the easterly and westerly limits of the lease M-30403 legally are as depicted on the plat attached to the notice for bids. Since the field notes are inconsistent with the sketch they legally form no part of the contract between Huber and the State and must be rejected.

(2) That the reference by Huber in its subsequent assignment to the field notes forms no basis for an estopel because it is evident that such reference was the result of an innocent mistake. Moreover, the State had no occasion to and in fact did not in any way rely on nor was it prejudiced by such reference and in the absence of such a showing an estopel will not lie. Kuehne v. Denson, 148 Tex. 54, 219 S.W. 2d 1006, 1008-1009, (1949).

(3) Since the lease, as now drawn, contains an ambiguous description of the property an amendment correctly describing the property should be executed by the Commissioner.

(4) The corrective amendment should have the approval of the School Land Board. Article 5421c-3, 10, V.C.S.

(5) According to the notice for bids the tract was leased on an "approximate" acreage basis. The bonus paid therefor need not be adjusted unless the increase in acreage occasioned by the inclusion of the triangles in question is unreasonable. Rich v. Ferguson, 45 Tex. 396 (1876); Slagle v. Clark, 237 S.W. 2d 430 (Civ. App. 1951); see also Wooten v. State, 142 Tex. 238, 177 S.W. 2d 57, 58 (1944). Since we do not at this time know the amount of acreage contained in the two triangles we are unable to determine whether the addition thereof will constitute an "unreasonable" increase. With respect to an increase in the payment of rentals your attention is invited to Paragraph 2 of the lease wherein Huber has agreed to pay rentals upon the actual acreage after the amount thereof has been determined by a survey acceptable to the Commissioner. This contractual provision is controlling (as to rental payments) and if a survey of the entire area reveals more than 1742 acres, the actual acreage should form the basis for the computation of all rentals accruing subsequent to the survey.

## SUMMARY

(1) A legal description of land contained in an advertisement for bids for mineral lease controls and takes precedence over an ambiguous description contained in a lease executed subsequent to an award to the successful bidder and the lease should be reformed to conform with the former description.

(2) An innocent reference by a lessee in an assignment of a lease to an erroneous description of the property embraced, when not relied on by or prejudicial to the interests of the State, will not estop the lessee from asserting a right to reform the lease to conform with a prior contract.

(3) A lease purporting to document a pre-existing contract and containing an erroneous property description should be amended or reformed to conform with such prior contract.

(4) The Commissioner of the General Land Office is authorized to amend and correct an erroneous lease only upon approval thereof by the School Land Board.

(5) Where a lease is entered into upon an "approximate" acreage basis no adjustment of the bonus paid legally is required unless the excess in acreage is unreasonable. The rentals payable under the lease in question are, according to the contract itself, determinable by the actual acreage content after such acreage is determined by a survey acceptable to the Commissioner of the General Land Office.

Respectfully submitted,

WILL WILSON
Attorney General of Texas

By James H. Rogers
Assistant

JHR:d-b

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman

/s/ Howard Mays

Sam Lane

James W. Wilson

REVIEWED FOR THE ATTORNEY GENERAL
BY:
Geo. P. Blackburn